# C. J. NEUMEIER, *d. b. a.* C. J. NEUMEIER COMPANY, v. H. J. SPERZEL.[1]

December 27, 1946.

No. 34,248.

---

[1]Reported in 25 N. W. (2d) 651.

*Arthur H. Lindeman* and *Thomas Tallakson,* for appellant.
*Covell, Root & Bachelder,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action to recover a broker's commission on the sale of defendant's residence in Minneapolis. There was a verdict for plaintiff. Defendant's alternative motion for judgment or a new trial was denied, and he appeals from the resulting judgment.

Viewing the facts in the light of the evidence upon which the verdict is founded, we find these to be substantially as follows: Plaintiff now is and for many years has been engaged in the business of selling real property. He is also engaged in the business of insurance and building construction. As a matter of fact, his firm built the house now the subject matter of this litigation. The parties to this cause are and have been well acquainted for about 18 years, their relations cordial. About the middle of May 1944 they met at the Minneapolis Athletic Club. What was said at that meeting is related by plaintiff at the trial substantially as follows:

"Q. Will you state the conversation?

"A. I shook hands with him [defendant]. He had just been released from the hospital and talked over his illness, and he said, 'I am going to sell my house,' and I said, 'What are you going to ask for it?' 'Well,' he said, 'I would like to get around $15,000. Do you think you can do it?' I said, 'The house is worth 15,000 and probably more. This is an erratic market where value does not seem to predominate. There are many features in that house which

were built exclusively for your use. Considerable money was invested in the best of material and labor. * * * [But] because of the amount of housing accommodation comparable with other houses that offer more commodious living, $15,000 would be the absolute tops that we could get for it.' I said, 'You must test this market before you know what any property will bring,' and he said, 'What is your commission?' and I said, 'Five percent,' and he said, 'Well, that is O. K.,' * * *."

The engagement was oral, and, as we have seen, it did not give plaintiff any exclusive right. At any rate, plaintiff actively and promptly proceeded with the customary job of a real estate broker. He went to the place a few days later, inspected it carefully, made notes, and took a picture of the premises, all for the purpose of furthering a sale and to induce prospective purchasers to make a deal. He forthwith advertised the premises, and by means thereof one Patrick R. Murphy came to see plaintiff about acquiring the property. To plaintiff's employe, one James W. Baxter, was entrusted the job of showing Murphy the premises and interesting him in the purchase thereof. Not only were there careful and minute inspections made of the house, the grounds, the garage, and other matters naturally of interest to a purchaser, but, in addition, Murphy and his wife were taken through the house and carefully inspected everything pertaining thereto, defendant's wife taking them through. On the next trip, Baxter escorted the entire Murphy family, including the children, taking them in his automobile to the house and then back to the place they were then occupying. On a third occasion, Murphy personally inspected the insulation in the attic, and to that end procured a ladder so that entry could be made through a trapdoor. After such inspection, he expressed himself as being well satisfied. That he was favorably impressed with the property and interested in a purchase thereof is clearly apparent, since he forthwith made an offer of $13,500. That offer was promptly communicated to defendant, who informed plaintiff that he "would not consider it." The next day Murphy asked Baxter

to come over to his office, and after a conversation said that he had decided to "amend my offer and make it $14,000." As to this offer, defendant said that it "would be satisfactory, but I do not think I can satisfy my wife on the commission." The next morning defendant, according to plaintiff's testimony, said: "* * * my wife won't sell. There isn't anything I can do. I even brought outside pressure to get her to take that price. I think it is O. K., but she won't sell." A further conference was had, in which Murphy, plaintiff, and Baxter participated. That resulted in an offer of $14,000 to be paid defendant and an additional $300 as plaintiff's commission. Plaintiff refused to accept that proposition, especially insofar as his commission was concerned. On their way back from this meeting, plaintiff and Baxter met defendant and informed him of what had taken place. Defendant told them, "As far as Murphy is concerned, I am through, and I am going to pull it [the house] off the market." Plaintiff replied, "Do you mean you are not going to sell it?" to which defendant answered, "No, I am not going to sell it." It was then getting toward the end of May. Murphy left on a trip to Texas and was gone about a week. On his return, he communicated with defendant and ascertained from him that the house was still for sale. Neither plaintiff nor Baxter was informed of Murphy's return nor of the fact that Murphy had contacted defendant and was negotiating for a direct purchase. A few days later, however, defendant informed plaintiff that "Now he [Murphy] wants to pay me direct, and he wants an allowance for half the taxes. I do not want anything to do with him at all. I am just going not to deal." Nevertheless he asked plaintiff, "In the event I would deal with Mr. Murphy, how do you and I stack up on such a transaction?" Plaintiff's answer was, "* * * if you sell, we will expect our regular commission," and defendant replied, "That is what I thought."

On June 20, 1944, defendant executed and delivered to another broker an "exclusive sales contract" under the terms of which that broker was granted "the exclusive right to sell or to contract to sell" the same premises for $15,750 at an agreed commission of

five percent. The same Mr. Murphy again came into the picture as that broker's customer, and in July a sale was made to him for that amount. Plaintiff's demand for his commission was answered by defendant's attorney by letter, in his client's behalf, in which he said:

"In view of the fact that you did not produce a buyer who was ready, willing and able to purchase the property, and did not consummate any deal, Mr. Sperzel is under no obligation to pay the amount requested."

In substance, the foregoing facts constitute the basis of plaintiff's cause.

The court's charge stands unchallenged except as to one sentence, which we shall separately consider and determine later. The important parts of its instructions are as follows:

"A broker is not entitled to a commission unless he was the procuring cause of the sale; that is, it must have been the direct result of his efforts to bring it about, and a broker seeking to recover a commission has the burden of proving this affirmatively.

"Where the contract is only to procure a purchaser, to entitle the broker to a commission for procuring a purchaser of the property on the specified terms, it is only necessary for him to produce a person ready, willing, and able to purchase upon the specified terms or upon such modified terms as the owner accepts and ratifies.

"Procuring cause is the originating of a course of action which without break in continuity results in reaching the goal of the employment, ordinarily a sale or exchange of the property. It is the efficient or effective means of bringing about the actual sale. It is not a question of whether the broker's influence persisted but whether it persisted to the end so as to become not a mere incidental or contributory cause, but it must be the efficient producing cause. Unless he contracts otherwise, an owner giving a broker a non-exclusive agency retains the right to sell either by himself or through other brokers, the only condition being that he must treat all with good faith and not interfere unduly with the negotiations of any.

\*   \*   \*   \*   \*

"In the absence of an exclusive listing a broker does not earn his commission simply by telling one who afterwards purchases that a property is for sale but he must also show that his services were the efficient or effective means of bringing about the sale.

"If plaintiff performs his contract he may recover without any reference to the rights of any other with a similar contract.

*"In considering the question of procuring cause you must determine whether the negotiations were for all practical purposes continuous—that is, did Murphy all along intend to purchase the property if he could get satisfactory terms?* The fact that defendant Sperzel may have subjected himself to liability for the payment of two commissions is not material and not a proper matter for your consideration." (Italics supplied.)

There was disagreement between the parties as to what their contract was in point of fact. Plaintiff's version was that he was only to find a purchaser ready, willing, and able to go through with a bargain as authorized by the owner. He claims that he did just that and thereby earned his commission. Defendant's version was that the contract required plaintiff to fully consummate a sale before a commission was earned. That issue was submitted to the jury for its determination, and we think, upon the facts recited, that that issue has been determined by the verdict and has adequate support for its foundation.

The important question in this case is whether, as asserted by defendant, there was "a break in the continuity of negotiations between the plaintiff's negotiations and the ultimate negotiations and sale by the subsequent real estate broker." He confidently asserts that the evidence conclusively shows that there was such break. He points to Murphy's final offer, $14,000 of which was to go to defendant plus $300 to pay plaintiff his commission. That offer having been rejected by both plaintiff and defendant, defendant therefore contends that he was relieved thereby of any further duty or obligation to plaintiff. In that belief, he subsequently entered into the contract with another broker, who was successful in mak-

ing a satisfactory sale. Defendant's testimony in that behalf was not deemed conclusive by the trial judge, who was of the view that the evidence presented a question of fact for the jury's determination. These significant facts should not be overlooked: That about May 15 defendant employed plaintiff to find a purchaser for his home, saying in substance that he "would like to get around $15,000" for it; that pursuant to this engagement plaintiff went to a great deal of labor, trouble, and expense to interest prospective buyers and that through plaintiff's efforts Murphy, who later purchased the property, was found and the property shown to him; that many negotiations were thereafter had between the parties; that Murphy became and remained interested in acquiring the property; that he was at all times interested in buying this particular place; and that it suited him. All this clearly appears, and Murphy so testified. Defendant did not take the property "off the market" but, instead, upon Murphy's return from Texas, immediately entered into negotiations with him directly. Before the purchase was completed, defendant conferred with plaintiff and was informed that if he made a deal with Murphy plaintiff would expect his regular commission, and defendant answered, "That is what I thought." All these things happened before defendant listed the property with another broker, through whose aid defendant made a satisfactory deal.

To be sure, plaintiff's contract was not an exclusive one. Defendant had the undoubted right to find his own purchaser on any terms that he might deem proper. But we cannot close our eyes to the fact that plaintiff found Murphy, and that by reason thereof a deal was ultimately consummated to defendant's complete satisfaction. Plaintiff was instrumental in bringing the purchaser and owner together. The jury has found that his efforts brought about the sale. As in Hubachek v. Hazzard, 83 Minn. 437, 440, 86 N. W. 426, 427, where a situation much similar to the present was presented, the trial court instructed the jury as follows:

" 'If you find that, after Clark's offer through Walton had been rejected, he (Clark) thereupon opened and continued negotiations for the purchase of this property with the defendants, all the time

intending to purchase in case he could get satisfactory terms, then the negotiations may be said to have been continuous, and you will be justified in that case in finding that Daniels was the primary cause, or primarily instrumental, in bringing the owners of the property and this purchaser together, and, of course, in that event, he will be entitled to recover the commission in question.'

"We find no error in this instruction, when considered in connection with the charge in its entirety."

There, as here, defendant challenged the charge as an improper one, but, as we have seen, this court approved of it. If we compare that instruction with the instruction here given, substituting plaintiff and Murphy for Daniels and Clark, respectively, it will be noted that basically the issue here was similarly submitted and upon an issue as vital there as it is here. As in that case, the jury could find that if Murphy's last offer prior to making his Texas trip had been rejected, but immediately upon his return he thereupon "opened and continued negotiations for the purchase of this property * * * all the time intending to purchase in case he could get satisfactory terms, then the negotiations may be said to have been continuous," and the jury would thereby be "justified * * * in finding" that plaintiff "was the primary cause, or primarily instrumental" in bringing the owner and purchaser together. If defendant had not engaged another broker but, instead, had dealt directly with Murphy, it is not likely that he would now seek to escape liability in this case. Thus, in Carney v. John Hancock Oil Co. 187 Minn. 293, 299, 245 N. W. 367, 369, we commented in respect to Steidl v. Mc-Clymonds, 90 Minn. 205, 95 N. W. 906, and said that "it was plain that plaintiff had brought vendor and vendee together. Not only that, he contributed substantial assistance in the negotiations resulting in the sale." And the fact that (90 Minn. 208, 95 N. W. 907) "the sale was made by the further assistance of other parties, cannot deprive the plaintiff of compensation for his beneficial services, if these were the procuring cause thereof."

The portion of the charge to which defendant excepted has been italicized and need not again be quoted. Obviously, this was but a

part of the general charge, and we must consider it in that light. Therein the court stated the general rules applicable to the facts appearing at the trial and the issues made by the pleadings. In his brief, defendant cites no case or other authority to sustain his claim of error. His only assertion here is "that it was not only the intention of Murphy that was controlling but all the circumstances and negotiations and the termination of them that must be taken into consideration * * *." The charge as a whole leaves no doubt that the jury "should consider all the negotiations, conversations, and dealings of the parties in respect to the subject-matter involved in this suit." What the court was talking about and defining was stated in this form:

"Procuring cause is the originating of a course of action which without break in continuity results in reaching the goal of the employment, ordinarily a sale or exchange of the property. It is the efficient or effective means of bringing about the actual sale."

While the case may be said to be of the borderline type, we cannot say as a matter of law that the trial court was wrong in submitting the questions of "procuring cause" and "continuity of service" to the jury for its determination.

On the subject of brokers' right to commission, the principles announced in our cases are found in the texts and notes of 1 Dunnell, Dig. & Supp. §§ 1149, 1151, and 1152. Under the last cited section, the author states:

"An owner who has employed a broker to sell his property may himself sell it without becoming liable to the broker for a commission, *if he did not give the broker the exclusive right to sell, and does not sell to a purchaser procured by the broker.* He may sell to a purchaser with whom the broker has negotiated, if the negotiation has been abandoned, or he is justifiably ignorant of its pendency." (Italics supplied.)

Judgment affirmed.