THE SPRING COMPANY v. SPENCER F. HOLLE
AND ANOTHER.

78 N. W. (2d) 315.

July 20, 1956—Nos. 36,794, 36,864.

*Ryan, Kain & Mikan* and *John Kressel,* for appellants.
*Best, Flanagan, Lewis, Simonet & Bellows,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by The Spring Company, a corporation engaged as a real estate broker in Minneapolis, against defendants, Spencer F. Holle and Jack J. Beugen, for damages alleged to have been sustained by plaintiff because of their actions in interfering with and invading plaintiff's rights under a listing agreement executed by Holle, where-

under he agreed to pay plaintiff a commission on the sale of his house. The house was sold by Holle to Beugen for $35,000. It is plaintiff's claim that it produced Beugen as a prospective purchaser and that it was the procuring cause of the sale to him. The damages it claims are equal to 5 percent of the sales price, the commission provided for under the terms of the listing agreement.

The trial court found that plaintiff had been the procuring cause of the sale; that Holle had become obligated to pay plaintiff as commission therefor 5 percent of the sales price; and that by their procedure in closing the transaction as hereinafter described Holle and Beugen had interfered with and invaded plaintiff's contractual right against Holle for such commission to plaintiff's damage in the sum of $1,750. Judgment against both defendants in such amount was ordered and subsequently entered. There is joined herein the appeal of defendant Holle from an order denying his motion for amended findings or a new trial; and the appeal of the defendant Beugen from the judgment.

The facts are as follows: On April 7, 1953, Holle executed a listing agreement granting plaintiff exclusive authority to sell the property involved for $49,900 or "any price or terms that I accept" and "when sold * * * to pay The Spring Co. a commission of five per cent * * *." By its terms this agreement expired June 1, 1953.

During the months of April and May 1953, on seven occasions, plaintiff advertised the house for sale in the Minneapolis Sunday Tribune, each of such advertisements advising readers that on the date thereof the house would be open for inspection. While the property was thus held open on such occasions, one of plaintiff's salesmen remained upon the premises to show it to prospective purchasers. As a result many of them called and examined the house, among them defendant Beugen who went through it with plaintiff's salesman on two different occasions. Later he was introduced to Holle by such salesman and subsequently on April 25, 1953, in consequence of the plaintiff's efforts, he submitted to Holle through plaintiff a written proposal, wherein he offered to purchase the house for $37,500. This offer was rejected by Holle who then made

a counterproposal that Beugen purchase it for $45,000, which proposal was rejected by Beugen. On May 15, 1953, likewise through plaintiff's salesman, Beugen submitted a second offer—this time for $39,000—which was also rejected by Holle.

Thereafter, subsequent to the expiration date of the listing agreement, plaintiff continued to show the house until late in the fall of 1953. Its activities in this respect were conducted with the knowledge and consent of Holle, who permitted it the use of the house keys on various occasions so that the house might be shown to additional prospects presented by plaintiff. Likewise, during this period, plaintiff's salesman continued to talk with Beugen with respect to the latter's purchase of the house, such discussions extending until November of 1953.

In October of 1953, without plaintiff's knowledge, Holle communicated directly with Beugen with respect to purchasing the property and persuaded him to look at it again. This time Holle offered it for $35,000, and Beugen quickly indicated his desire to purchase the property at that figure. An unusual sales procedure was then adopted, which the trial court found was resorted to because of Holle's belief that most listing contracts had provisions protecting the agents therein on their commissions for six months after the expiration date thereof. The procedure was as follows: On November 6, 1953, an agreement was executed, wherein Holle extended to Beugen an option of 30 days in which to purchase the property for the sum of $35,000. As consideration for this 30-day option, Beugen paid Holle the sum of $2,500. Attached to the option agreement was an earnest money contract, execution of which by Beugen would indicate his exercise of the option. At the same time, Holle signed and delivered to Beugen an instrument which provided that if Beugen exercised the option and "if any person, firm or corporation shall after the exercise of said option claim or demand a commission for the sale of said property to Jack Beugen that the undersigned will save and hold harmless said Jack Beugen from any claim or demand for said commission and will defend at his own cost any action instituted on said claim or demand." On Decem-

ber 2, 1953, six months and a few days after the exclusive listing agreement had expired, Beugen exercised his right to purchase and executed the earnest money contract.

No details of the transaction were disclosed to plaintiff who first became aware that Beugen had purchased the property when the warranty deed thereof was recorded. Thereafter, it demanded of Holle that its commission be paid. In response thereto Holle replied: "We do not owe a commission to the Spring Company * * * because the six months have elapsed between the time the listing expired and the house was transferred" and that "If you transfer a house six months after the expiration of the listing, we do not owe you a commission * * * just try and get a dime out of me." There was testimony that many listing contracts contain a provision protecting agents for six months on sales made to prospects procured by them while such agreements have been in effect but that plaintiff had eliminated such provisions from the form of listing agreement which it used. When asked why the above procedure was followed, neither defendant was able to offer an explanation. The trial court found that it was resorted to in "a deliberate attempt to deprive the plaintiff of an earned commission."

On appeal it is contended that the evidence fails to sustain the trial court's finding (1) that plaintiff had been the procuring cause of the sale; and (2) that defendants, by the procedure outlined, had unlawfully interfered with plaintiff's contract right so as to deprive it of its earned commission.

■ It is conceded by defendants that, if the evidence sustains the finding that plaintiff was the procuring cause of the sale described, the fact that the sale was not consummated until after the expiration date of the listing agreement and then by Holle alone at a price lower than specified to plaintiff would be immaterial. Neumeier v. Sperzel, 223 Minn. 60, 25 N. W. (2d) 651; Jaeger v. Glover, 89 Minn. 490, 95 N. W. 311; Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426; Steidl v. McClymonds, 90 Minn. 205, 95 N. W. 906. (Hentges v. Wolff, 240 Minn. 517, 61 N. W. [2d] 748, is limited to the specific provisions of the contract there involved.)

■ To sustain a finding that an agent is the procuring cause of a sale, there must be evidence that he originated a course of events which without a break in their continuity created a cause of which the sale was the result. It is not enough that his services merely contributed to the result. They must be the producing and effective means thereof. Neumeier v. Sperzel, *supra;* Steidl v. McClymonds, *supra;* 3 Dunnell, Dig. (3 ed.) § 1149.

In Neumeier v. Sperzel, *supra,* there was evidence that plaintiff, a real estate agent, had first introduced a prospective purchaser to the home owner; that on two occasions plaintiff had submitted bids to the owner from the prospect which were rejected by the owner; and that, after the owner had terminated the agency agreement with plaintiff, the sale of the property at an increased price to plaintiff's prospect had been consummated by the owner through a new agent. There we held that such facts were sufficient to support a finding that the first agent had been the procuring cause of the sale and was entitled to the agreed commission notwithstanding the fact that the owner had paid a commission to the second agent. There the court stated (223 Minn. 65, 25 N. W. [2d] 654):

"* * * That offer [made through plaintiff] having been rejected by both plaintiff and defendant, defendant therefore contends that he was relieved thereby of any further duty or obligation to plaintiff. * * *

"* * * But we cannot close our eyes to the fact that plaintiff found Murphy [the purchaser], and that by reason thereof a deal was ultimately consummated to defendant's complete satisfaction. Plaintiff was instrumental in bringing the purchaser and owner together. The jury has found that his efforts brought about the sale."

■ In the instant case within the principles thus outlined, there is ample evidence to sustain a finding that plaintiff was the procuring cause of the sale from Holle to Beugen. It is not disputed that through plaintiff's efforts and expenditures Beugen first became interested in the property and was introduced to Holle; that plaintiff's salesman showed him through it on two occasions at which time he carefully examined its construction and its mechanical

equipment; that thereafter through plaintiff he submitted to Holle two written offers for purchase of the property, both of which exceeded the amount for which Holle ultimately sold it to him; that after such offers had been rejected, and after the listing agreement had expired, plaintiff continued its efforts to induce him to purchase the property until November of 1953; and that, before the final sale to him was consummated, he did not again visit the property except on one occasion. It is significant that only one week elapsed after Holle contacted him before he agreed to execute the option. Both he and Holle appeared cognizant that plaintiff was the procuring cause of the sale. Only their belief that expiration of the feared six months' period would terminate Holle's obligation to pay plaintiff's commission would explain the elaborate delaying device to which they resorted in consummating the sale.

■ Likewise, the evidence is sufficient to sustain a finding that defendants Holle and Beugen had unlawfully interfered with and invaded the contract relation existing between plaintiff and Holle and thereby deprived plaintiff of its earned commission. The measure of damages therefor would, of course, at least equal the commission plaintiff would otherwise have earned on the sale or $1,750, Swaney v. Crawley, 133 Minn. 57, 157 N. W. 910, and plaintiff properly joined defendants in its action to recover the same. Sorenson v. Chevrolet Motor Co. 171 Minn. 260, 214 N. W. 754, 84 A. L. R. 35; Hornstein v. Podwitz, 254 N. Y. 443, 173 N. E. 674, 84 A. L. R. 1; Tatarsky v. Wavecrest Bldg. Corp. 49 N. Y. S. (2d) 335; Rules 18 and 20 of Rules of Civil Procedure.

■ In establishing its cause, it was essential for plaintiff to prove only an interference with or invasion of the described contractual relationship and the damages resulting because thereof. Proof of any acts of defendants which injured or destroyed such relationship, or which retarded or prevented its performance would establish their liability for any damages due thereto. Johnson v. Gustafson, 201 Minn. 629, 277 N. W. 252, citing Annotation, 84 A. L. R. 52; Mealey v. Bemidji Lbr. Co. 118 Minn. 427, 136 N. W. 1090. Under these well-established principles, it is clear that the evidence in the

instant case is sufficient to support the trial court's finding on this issue. It is not disputed that Beugen was aware that plaintiff had an exclusive listing agreement covering Holle's property. It is not disputed that before its expiration and thereafter with Holle's consent plaintiff showed the property to Beugen, and the latter must have been well aware of the continuance of this contractual relationship. The actions of defendants in executing the option agreement which effected a sale just a few days beyond the date which they believed limited Holle's liability for the commission; their failure to notify plaintiff of the consummation of the sale and thereafter their silence with respect thereto; the indemnity agreement which Beugen insisted Holle execute to protect him against any and all claims for commission all are indicative of their knowledge of Holle's contractual obligation to plaintiff and their design to invade and interfere with it.

■ That plaintiff was damaged by such conduct is likewise clear. Had it been aware that the sale was to be consummated, there can be no doubt but that it would have insisted upon being present at the time to insure payment of its commission out of the sales price. Defendants' actions prevented this and plaintiff's damages may be attributed directly thereto. Of course, if plaintiff is now able to collect its judgment from Holle, under the indemnity agreement above described, Beugen would not be liable for contributions to the latter therefor. It is clear from the evidence that the findings of the trial court must be sustained.

The order and judgment appealed from are affirmed.

Affirmed.