HENRY W. GUNDERSON AND ANOTHER v. NORTH AMERICAN LIFE & CASUALTY COMPANY.

78 N. W. (2d) 328.

August 3, 1956—No. 36,835.

*Johnson, Sands & Brumfield,* for appellant.
*Harry H. Peterson* and *Leonard Frank,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by Henry W. Gunderson and Hilmer C. Carlson against defendant, North American Life and Casualty Company, for commissions claimed due them on the sale of a policy of group life insurance purchased from defendant by the Durkee-Atwood Company. Following submission of the evidence, plaintiffs and defendant both moved for directed verdicts. The court denied defendant's motion therefor and granted plaintiffs' motion for a verdict in the sum of $3,246.65. That the amount of such verdict is the proper measurement of the disputed commission is not denied, but defendant disputes its liability in any amount and from the judgment subsequently entered takes this appeal.

The facts are as follows: Plaintiff Henry W. Gunderson was employed by defendant as a field underwriter and agent pursuant to two written contracts dated November 15, 1947, and November 19, 1947, which authorized him to sell on behalf of defendant policies of life, health, and accident insurance not including "group" policies.

On January 14, 1948, he entered into an additional written agreement with defendant which authorized him to sell "group" policies of life, health, accident, hospitalization, surgical, and medical expense insurance. This agreement of January 14, 1948, provided that:

"* * * while he [Gunderson] is recognized as Field Underwriter or Broker on the risk by the company, *the Company will pay the Field Underwriter or Broker on premiums paid on the above forms of Insurance written and accepted on or after June 1, 1947,* commissions in accordance with the following schedule: [a schedule of commissions payable on first year and renewal business was thereafter set forth]." (Italics supplied.)

Plaintiff Hilmer C. Carlson became a field underwriter and agent for defendant on April 12, 1928, pursuant to written agreements similar to Gunderson's except that he was at no time authorized to sell group insurance. On such policies, with the consent of defendant, he worked with Gunderson, dividing with the latter any commissions earned as a result of their joint efforts.

On February 15, 1949, Carlson learned that Durkee-Atwood might be in the market for a "group" policy of life, hospital, and medical expense insurance upon its employees. He and Gunderson reported this to Mr. James Morrison, manager of defendant's group department. They inquired of him whether any other field underwriter or agent of defendant had reported Durkee-Atwood as a prospect and if they might submit a bid or proposal on such a policy to the latter on behalf of defendant. They were then informed by Morrison that they were free to solicit Durkee-Atwood to purchase such insurance from defendant. He said, "it is * * * your case," but that "some other broker may come in on it, because it is the privilege of the buyer to select the agent of record on the case."

On the same date plaintiffs called upon Durkee-Atwood and interviewed its vice president, Mr. Donald F. Pratt, with respect to the group policy. They were advised by Pratt that Durkee-Atwood was interested in such a policy upon its employees and "intended to shop around among a number of insurance companies, and that they

[plaintiffs] would be permitted an opportunity to submit a proposal." They were advised by Pratt that they were faced with a "tough competitive situation"; that "Don Miller had written all of the Durkee-Atwood's insurance, * * * and * * * had furnished * * * extremely good service," and that he (Pratt) "wouldn't be a bit surprised that no matter how much work anybody did on it, Don Miller would get the business."

On May 11, 1949, Gunderson received a letter from Durkee-Atwood requesting that defendant submit a bid or proposal as to the cost of a combination group policy based upon an enclosed summary of the number and classification of Durkee-Atwood employees. Identical letters and summaries were forwarded by Durkee-Atwood to a number of other insurance companies. In response thereto bids or proposals with respect to the cost of such a policy were submitted to it by ten companies including defendant, each bid quoting the cost per man hour which the bidder would charge for carrying the policy. Defendant submitted the lowest bid. Don Miller, representing Continental Casualty Company, submitted a bid on its behalf higher than those of defendant and most of the other companies bidding.

Between May 25, 1949, and August 23, 1949, Gunderson called upon Pratt on a number of occasions with reference to the policy. On some of these visits he was accompanied by Carlson and on others by Morrison. As an outgrowth thereof, defendant's initial proposal was supplemented by several new proposals which Gunderson submitted to Durkee-Atwood. At a meeting on August 23, 1949, Gunderson was informed by Pratt that the weekly indemnity rates submitted by defendant on the accident and health coverage of the policy were high but that the remainder of the proposal was satisfactory. Gunderson promptly conveyed this information to Morrison, and on the same day the latter called upon Pratt, proposing a lower rate on the accident and health coverage. Later that day Pratt called Morrison and told him that Durkee-Atwood would accept defendant's policy provided Don Miller was named as agent on the case.

On August 24, 1949, Mr. Harry C. Atwood, president of Durkee-Atwood, called Mr. H. P. Skoglund, president of defendant corporation, and likewise advised him that Durkee-Atwood would give the business to defendant if Don Miller were named as agent on the case. Miller did not represent defendant and had no agreement with it, but Skoglund advised Atwood that he would confer with Morrison as to the request and would advise Atwood the following day if it were acceptable to defendant. Later the same day, plaintiffs were advised by Morrison that defendant had been selected as the underwriter but that Don Miller was to be the agent in the case. Gunderson then charged Morrison with double-crossing him and that "this is the second time in ten days you have taken me, first on Stremel Brothers, and now on the Durkee-Atwood Company. It looks like you fellows are conniving not to pay me my commissions."

At Morrison's suggestion plaintiffs and Morrison then went to Skoglund's office. Skoglund testified that at that time he told plaintiffs that he "wanted to be fair with them and * * * to let them know before we took the case." Asked as to any further remarks at that time, he testified that "As I gathered from the conversation, it was just final, they were out as agents on the case, and we were going to get the business, if we could get it, from Durkee-Atwood." Plaintiffs were then instructed by Skoglund not to contact Durkee-Atwood further. Without consulting plaintiffs, Morrison, on behalf of defendant, wrote Durkee-Atwood as follows on August 25, 1949:

"This will confirm our conversation in which you advised me that we have been selected as the company to underwrite the plan of Group insurance that was previously discussed and which I understand is as follows: [Group Insurance Plan set forth here.]

* * * * *

"You may be assured that we are most happy to be selected as the company to underwrite this welfare program and each and every member of your good company may also be assured that you can expect to receive from us at all times the very best of service which will insure the successful administration of this program."

On August 31, 1949, the Don Miller Agency submitted to defendant Durkee-Atwood's application for the group policy based upon the proposals submitted to Durkee-Atwood by plaintiffs as defendant's agents and as covered by the letter of August 25, 1949. Without advising plaintiffs thereof, defendant promptly accepted the application, placed the insurance in force, and received the first annual premium therefor from Durkee-Atwood. Plaintiffs have at no time been compensated for their services, and the record is clear that they have at no time waived their rights thereto or otherwise acquiesced in defendant's actions in substituting Miller as agent in the case.

On appeal the only question presented is whether defendant breached its agreement with plaintiffs. In directing a verdict for plaintiffs, the trial court stated to the jury that:

"* * * the evidence * * * definitely shows that there was an interference with the plaintiffs' performance, * * * the plaintiffs should be entitled to their commissions as though they were allowed to complete performance."

■ It is well settled that, when a principal closes a transaction with a customer procured by his agent, whether on the same or different terms than those submitted by the agent at the principal's direction, the principal is liable to the agent for the agreed commission, Neumeier v. Sperzel, 223 Minn. 60, 25 N. W. (2d) 651; Jaeger v. Glover, 89 Minn. 490, 95 N. W. 311; even though the agent's right to deal with such customer was not exclusive, Dahlgren v. Olson, 228 Minn. 379, 37 N. W. (2d) 438; see, also, Segerstrom v. Webb, 187 Minn. 20, 244 N. W. 49; and even though the principal closed the transaction through another agent. Neumeier v. Sperzel, 223 Minn. 60, 25 N. W. (2d) 651.

■ The test determinative of the agent's right to the commission is whether he actually found or produced the customer and whether by reason thereof the sale thereto was ultimately consummated to the principal's satisfaction. Neumeier v. Sperzel, *supra*. This principle has been expressed in Annotation, 88 A. L. R. 720, as follows:

"* * * While the principal may in good faith revoke the broker's agency, where no time is fixed for its continuance, and a purchaser

has not yet been procured, even though negotiations with a customer are pending, he is not entitled to revoke the agency for the purpose of avoiding payment of commission, and if he attempts to do so, or if, without any express revocation, he interferes in the midst of pending negotiations between a prospective purchaser and the broker by taking the matter into his own hands and completing a sale himself, or through *another agent,* * * * such revocation or intervention will not defeat the broker's right to commission." (Italics supplied.)

It appears applicable to insurance agency contracts and the right to compensation thereunder. 44 C. J. S., Insurance, § 162; Peebles v. Prudential Ins. Co. (6 Cir.) 110 F. (2d) 76; Lanowah Investment Co. v. John Hancock Mutual Life Ins. Co. 236 Mo. App. 1062, 162 S. W. (2d) 307.

■ Here it is not disputed that plaintiffs had performed all the work essential to the sale of the group policy to Durkee-Atwood. They had produced this company as a prospective customer for such a policy and had worked continuously upon the sale thereof to it from early in February 1949 until August of that year. They were instrumental in having defendant submit the lowest bid for carrying the policy; in procuring revisions thereof, which made it acceptable to Durkee-Atwood; and in bringing about its purchase by the latter. It is true the application for the policy was presented to defendant by Don Miller, designated by Durkee-Atwood as agent in the transaction, but it would seem that, after plaintiffs by their efforts had induced the sale of the policy, defendant could not in justice thereafter escape its contractual obligation to them therefor by entering into a collateral agreement with the purchaser designating another as agent in the case. If at the request of Durkee-Atwood defendant chose to obligate itself to Miller for the commission on the sale, that was its concern, but thereby it did not create a means or method of escape from its liability to plaintiffs. Lanowah Investment Co. v. John Hancock Mutual Life. Ins. Co. 236 Mo. App. 1062, 162 S. W. (2d) 307.

■ Cases cited by appellant in support of a contrary viewpoint appear distinguishable. In some, defendant insurance companies were found to have had no contract with plaintiffs suing for commissions. Hanley v. Marsh & McLennan, 46 Cal. App. (2d) 787, 117 P. (2d) 69; Degnan v. General Acc. Fire & Life Assur. Corp. 161 App. Div. 439, 146 N. Y. S. 360; Clinchy v. Grandview Dairy, 283 N. Y. 39, 27 N. E. (2d) 425. In others it was found that the agents bringing suit for commissions had not been the procuring cause of the sales on which the commissions were claimed. Fritschle v. New Amsterdam Cas. Co. 209 Mo. App. 337, 238 S. W. 850; Walther v. Occidental Life Ins. Co. 40 Cal. App. (2d) 160, 104 P. (2d) 551. In others the insured had exercised the right reserved in the policy to cancel the insurance and had thus eliminated the agent therein, an act which the court held the insurer was under no contractual obligation to resist. Beidler & Bookmyer v. Universal Ins. Co. (2 Cir.) 134 F. (2d) 828; Beidler & Bookmyer v. Universal Ins. Co. (2 Cir.) 140 F. (2d) 390; Northwest Underwriters v. Hamilton (8 Cir.) 151 F. (2d) 389; Degnan v. General Acc. Fire & Life Assur. Corp. *supra.* In one it was found that the agents' failure to complete performance of the contract was not due to any interference or fault on the part of the company. Erlin v. National Union Fire Ins. Co. 217 Cal. 374, 18 P. (2d) 660.

■ Defendant contends that under the express terms of insurance agency contracts, such as that here involved, no obligation to pay a commission arises unless the application for insurance is actually submitted to the company by the agent claiming a commission on a sale; that otherwise there would always be a possibility that some other agent might later claim that he was the procuring cause of the sale and compel a second payment of commission thereon. However sound this rule may be for the protection of the company, we do not feel that it may be invoked as a defense in a situation such as that presented here, where the company by its own actions and conduct has made it impossible for the agents who consummated the sale to the insured to submit to the company the application in connection therewith. To hold to the contrary would mean that

a company could escape all liability to an agent procuring the sale of its insurance by the simple device of handing the application to another agent after the sale was made and instructing the latter to obtain the signature of the insured thereon. Clearly, under such circumstances, the company would be estopped from asserting that the failure of the agent who induced the sale to submit the application therein, as required by the contract, absolved the company from its obligation to pay the commission required by the contract. Reinkey v. Findley Elec. Co. 147 Minn. 161, 180 N. W. 236; Scheerschmidt v. Smith, 74 Minn. 224, 229, 77 N. W. 34, 35.

The judgment appealed from is affirmed.

Affirmed.