[No. 37523.   Department Two.   November 18, 1965.]

F. D. HILL AND COMPANY et al., *Respondents*, v. CLARENCE WALLERICH et al., *Appellants.**

*Murray J. Anderson* (of *Lee, Krilich & Anderson*), for appellants.

*Owen P. Hughes* (of *Neal, Bonneville & Hughes*), for respondents.

KELLY, J.†—This is an action to recover the loss of a real-estate commission.

Charles and Marian McPhail, owners of real estate with a dwelling house and other improvements entered into a written listing agreement with E. F. Bridewell, a real-estate

*Reported in 407 P.2d 956.

†Judge Kelly is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

salesman employed by F. D. Hill and Company, which provided for the exclusive right of the broker to obtain a buyer for the period April 6, 1959, to June 15, 1959. This listing agreement also provided that the selling price would be $70,000, $65,000 of which would be net to the owners and $5,000 as commission to the broker, who would also pay closing costs.

Bridewell introduced Clarence Wallerich to the McPhails as a prospective buyer. Bridewell accompanied Wallerich to the McPhail property twice in May and again about June 10th. No offer was made to purchase during these times. Wallerich revisited the property on three other occasions by himself. McPhail informed Wallerich of the listing agreement and its terms. McPhail told Wallerich on the latter's June 14th visit that after midnight on June 15th he would take the property off the market and subdivide it, and that he had so informed Bridewell. Wallerich said he would change his mind after June 15th and buy the place. McPhail indicated that Bridewell would have to be taken care of, to which Wallerich replied (according to McPhail's testimony), that he would take care of it, that "he had three or four cars laying around out there that was [sic] on his own books that he wanted to get rid of."

On June 15th, before the expiration of the listing agreement, Wallerich and McPhail made an oral agreement on a purchase price of $65,000, with an understanding that Wallerich would take care of the broker's commission.

An earnest money receipt dated June 25, 1959, stated the provisions of the sale, but did not provide for the payment of a real-estate commission. It also did not contain a description of the property.

McPhail gave the following explanation in his testimony at trial:

Q. Why wasn't the earnest money—why wasn't the real estate commission provision, that is, the obligation of Mr. Wallerich in accordance with your oral undertaking or his oral undertaking, entered in this earnest money agreement, Plaintiff's Exhibit Number Two? A. Well, I had a verbal agreement from Mr. Wallerich that he was going to take care of Mr. Bridewell regardless

of what. I don't know what it was. Like I explained to him, I didn't care if it was ten dollars, as long as Mr. Bridewell was satisfied; so I had an agreement from him that he was going to take care of him for the commission. When this earnest money receipt or earnest money was put down and closed at the bank, why I naturally trusted him that his word was good.

No demand was made of the McPhails for the commission. Wallerich later denied that he had agreed with McPhail to pay the commission. When he was requested to pay, Bridewell testified that Wallerich said, "Well, Pete, he says, You've been so doggoned nice to me, he says, I don't want to see you come out with nothing. If it would make you feel better, I would give you a car to compensate you for what you have done."

On request of admissions before trial, Wallerich admitted that he had never intended to pay a commission.

F. D. Hill and Company and Bridewell alleged three alternative causes of action in their complaint: (1) breach of contract on a third-party beneficiary promise made by Wallerich to McPhail for the benefit of the broker; (2) based on the same words as in cause No. 1, but sounding in fraud for fraudulently speaking to induce the signing of the earnest money agreement by the sellers or to induce the sellers to reduce the price of the property causing damage to plaintiffs; (3) for the tortious interference with contractual relationship between plaintiffs and the sellers.

The trial court dismissed the first and second causes and the third cause went to the jury, resulting in verdict for plaintiffs. Defendant Wallerich appealed and plaintiffs cross-appealed from the dismissal of their first two alternate causes of action. However, on oral argument, counsel for plaintiffs conditionally waived the cross-appeal if there is an affirmance but demands consideration of the cross-appeal if there is a remand for a new trial.

Defendants assign error for the trial court's denial of defendants' motions to dismiss all three of plaintiffs' counts and the giving of instruction No. 3 to the jury relating to the five elements necessary to constitute wrongful inter-

ference with contractual relationship. Instruction No. 3, as given by the trial court, was:

Before you can return a verdict in favor of the plaintiffs and against the defendants Wallerich on the plaintiff's claim, you must find from the evidence:

1. That there was an agreement between the plaintiffs and McPhails, under which McPhails agreed to pay plaintiffs a real estate commission.

2. The defendants Wallerich had knowledge of the agreement between plaintiffs and McPhails.

3. That the defendants wrongfully interfered with the contractual relationship between plaintiffs and McPhail and intentionally procured a breach of the agreement between plaintiffs and McPhails.

4. That the interference and procurement of the breach by defendants Wallerich was without justification.

5. That plaintiffs sustained damages as a result of the breach.

If you find all the five elements, as above outlined, then it will be your duty to return a verdict in favor of the plaintiffs.

We omit from our discussion reference to the first two causes of action alleged by the plaintiffs in their complaint since it is our view that the judgment entered by the superior court on the verdict was correct and the plaintiffs have waived a determination of their cross-appeal in the event of an affirmance.

The defendants contend that whatever contract the plaintiffs may have had with the McPhails, it was in no way interfered with or disturbed by them. They argue that the plaintiffs could not have successfully sued the McPhails directly for a real-estate commission, because the listing agreement is not sufficient under RCW 19.36.010(5). The real property description is to be part of the listing agreement. *Leo v. Casselman,* 29 Wn.2d 47, 185 P.2d 107 (1947). The statute of frauds defense which might be available to the seller McPhail is not available to defendants here since they are strangers to the contract. *Backus v. Feeks,* 71 Wash. 508, 129 Pac. 86 (1913). Moreover, the third cause of action, upon which plaintiffs recovered, is

not based upon contract as such but is an action in tort. The existence of a valid enforceable contract is not a prerequisite to the maintenance of the action. *Hein v. Chrysler Corp.,* 45 Wn.2d 586, 589, 277 P.2d 708 (1954).

Whether or not plaintiffs have other remedies is irrelevant. The Maryland Court of Appeals in *Horn v. Seth,* 201 Md. 589, 598, 95 A.2d 312, 316 (1953), said:

It is true that the plaintiff [broker] could have sued the Brambles [owners] for his commissions, but he was not compelled to do so, if he chose to sue the interferer in tort instead of the owner in contract.

In our most recent pronouncement that intentional and unjustified third-party interference with contractual relations or business expectancies constitutes a tort, we have thoroughly and carefully considered the problem and have enunciated the basic elements going into a prima facie establishment of the tort. We stated them to be, in *Calbom v. Knudtzon,* 65 Wn.2d 157, 162, 396 P.2d 148 (1964):

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

In that case, where an attorney sued on the basis of the same tort here complained of, in spite of the fact that there was a terminable attorney-client relationship which was alleged to have been disrupted by defendant, we said at page 164:

Although the relationship thus established was terminable at the will of the parties, we are convinced the evidence and the reasonable inferences therefrom amply support the trial court's finding of an existing attorney-client relationship which plaintiff had every right to anticipate would continue, and which would have continued but for the intervention of defendants.

The fact that this is the first case in our jurisdiction on the specific problem of a real estate broker's right to recover damages in tort on the ground that he was wrongfully

prevented from earning or collecting his commission does not preclude the application of the general principles outlined above. No reason has been suggested to us why these rules of law should not apply in this case. We do observe that other jurisdictions have had occasion to consider suits brought by real-estate brokers sounding in tort.

In *Louis Kamm, Inc. v. Flink,* 113 N.J.L. 582, 586, 175 Atl. 62, 66 (1934), the Court of Errors and Appeals of New Jersey, in considering the same question as confronts us, observed that:

> The right to pursue a lawful business is a property right that the law protects against *unjustifiable* interference. Any act or omission which unjustifiably disturbs or impedes the enjoyment of such right constitutes its wrongful invasion, and is properly treated as tortious.

In *Myers v. Arcadio, Inc.,* 73 N.J. Super. 493, 500, 180 A.2d 329, 332 (1962), the Appellate Division of the Superior Court of New Jersey states that:

> It is actionable to rob the broker of the product of his stock and his industry when, but for the wrong of the buyer, it is reasonably probable that the owner would have paid the broker for it.

Some other cases which recognize the right of a broker to sue for the tortious interference with the broker's business are: *Williams & Co. v. Collins, Tuttle & Co.,* 176 N.Y.S.2d 99, 6 App. Div. 2d 302 (1958); *Spring Co. v. Holle,* 248 Minn. 51, 78 N.W.2d 315 (1956); *Dunn v. Cox,* 163 A.2d 609, (Mun. Ct. App. D.C. 1960); *Horn v. Seth, supra; George H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc.,* 44 N.J. Super. 159, 130 A.2d 48 (1957); *Iowa Sec. Co. v. Schaefer,* 256 Iowa 219, 126 N.W.2d 922 (1964); *Rogers v. Grua,* 215 Cal. App. 2d 1, 30 Cal. Rptr. 39 (1963); *Williams v. Ashcraft,* 72 N.M. 120, 381 P.2d 55 (1963). See, also, annotations in 97 A.L.R. 1273, 146 A.L.R. 1417 and 1965 Supp.

The fact that in this case the interferer is also the purchaser does not diminish the applicability of the rule. *George H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc., supra; Spring Co. v. Holle, supra.*

The defendant does not argue with any specificity which part of instruction No. 3 constituted error. His attack, arguendo, is that respondent had no right to recover anything from him under any theory of law and that to submit any question of fact to the jury, under instruction No. 3 or otherwise, was error. We do not agree. *Calbom v. Knudtzon, supra.*

■ In brief, the tort consists in the wrongful interference with an existing business relationship between parties, in which inhered a reasonable expectancy of fruition except for such interference, and damage resulted therefrom. Defendant contends that he did not interfere with plaintiffs' contractual rights or business expectancy. The jury found that he did. Where there is substantial evidence to support a jury's finding, it will not be disturbed on appeal. *Kasey v. Suburban Gas Heat of Kennewick, Inc.,* 60 Wn.2d 468, 374 P.2d 549 (1962).

Judgment affirmed.

ROSELLINI, C. J., HILL, WEAVER, and HAMILTON, JJ., concur.