**LYNN BEECHLER REALTY COMPANY, Appellant,**

v.

**Bruce WARNYGORA, et al., Respondents.**

No. C9–86–561.

Court of Appeals of Minnesota.

Dec. 2, 1986.

· Donald C. Erickson, Johnson, Killen, Thibodeau & Seiler, Duluth, for appellant.

Timothy N. Downs, MacDonald, Munger & Downs, Duluth, for respondents.

Heard, considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

On November 8, 1983, appellant Lynn Beechler Realty Company (Beechler Realty) sued its former customers, respondents Bruce and Betsy Warnygora, claiming the Warnygoras owed it a $6230 sales commission, together with interest, costs and disbursements, on the sale of the Warnygoras' home.

On August 7, 1985, appellant amended its complaint, alleging breach of contract, unjust enrichment, equitable estoppel, promissory estoppel, and fraud. In addition to the commission, appellant sought interest, legal fees, and punitive damages. The trial court dismissed appellant's complaint and granted respondents costs and disbursements. On April 2, 1986, Lynn Beechler Realty Co. appealed. We affirm.

## FACTS

On August 5, 1982, Beechler Realty executed a listing agreement with respondents Bruce and Betsy Warnygora to sell their Duluth lakeshore home. The listing agreement prepared by appellant gave Beechler Realty the exclusive right to sell the Warnygora property. Under the terms of the agreement, for 120 days from the date of signing, respondents agreed to pay appellant a seven percent commission if

> a purchaser is procured who is ready, willing and able to purchase said property on * * * terms agreeable [to sellers] whether purchaser be procured by said broker or by [seller] or through another source, or if said property be withdrawn from sale, transferred, exchanged, conveyed or leased prior to the expiration of this contract or any extension thereof.

The listing agreement contained a standard "override clause" which provided that if respondents were to sell the property within 120 days after the expiration date to any purchaser to whom the property had been shown, submitted, or offered during the term of the agreement, the broker still would be entitled to the seven percent commission.

The parties extended the listing agreement at least four times after the original listing period expired. The last extension terminated on April 5, 1983. By that date no acceptable purchaser had been found.

On April 12, 1983, Betty Gronseth, a real estate agent with another company, contacted appellant's office and obtained permission to show respondents' home. She had learned about respondents' home through the multiple listing service with which appellant had listed it. On the same day, Gronseth showed respondents' home to Mrs. Jeri Kerns.

On April 16, 1983, Mr. and Mrs. Kerns asked to see respondents' home. On the same day, they made a purchase offer to respondents. On April 18, 1983, respondents called appellant to request that the sign in their yard be taken down. They told appellant they had decided not to sell. On the same day, the Kerns and respondents entered into a purchase agreement. Approximately on August 1, 1983, respondents sold the property to the Kerns.

Appellant had never provided respondents with a protective list of customers after the listing agreement expired.

## ISSUE

Did the trial court err by finding that appellant's failure to deliver a protective customer list to defendants barred a subsequent action for commission?

## ANALYSIS

■ To recover a commission from respondents for the sale of their home, appellant must show that a valid listing agreement was in effect at the time. Minn.Stat. § 82.33, subd. 2 (1982). *See also* Minnesota Rules 2800.3800, subp. 2 (1983). The lack of written contract is a bar to an action brought by a broker. *PMH Properties v. Nichols,* 263 N.W.2d 799, 802 n. 3 (Minn.1978).

■ Appellant's claim for a commission is based on the existence of the written listing agreement. Respondents contend the absence of an extension to the listing agreement after April 5, 1983, bars appellant's action. The trial court agreed, finding that appellant's listing agreement, including all extensions, expressed or implied, had expired on April 5, 1983, and had not been renewed. The court concluded that there was no contract between the parties after April 5, 1983. Appellant contends that the listing agreement was extended by implication and continued to be valid until April 18, 1983, the date respondents requested appellant to remove the "for sale" sign from their front yard.

Whether the listing agreement was in effect after April 5, 1983, is a question for the trier of fact. The existence of an implied contract depends on inferences drawn from the parties' conduct and statements. *Bergstedt, Wahlberg, Bergquist Associates, Inc. v. Rothchild,* 302 Minn. 476, 479–80, 225 N.W.2d 261, 263 (1975). The trial court is in the best position to judge the credibility of the witnesses. The trial court found no implied contract existed after April 5, 1983. We find no reason on review to disturb that finding of fact.

The trial court's finding of fact is supported, among other things, by evidence showing that appellant did not contact respondents between April 6 and April 18 asking them if they wished to extend the contract with appellant one more time. We affirm the trial court's finding that all contractual listing obligations between appellant and respondents expired as of April 5, 1983.

■ To bring an action for commission, a broker must substantially comply with Minnesota Rules 2800.3800, subp. 2, as well as with Minn.Stat. § 82.33, subd. 2. *R.M. Parranto Co. v. Bernick,* 354 N.W.2d 600 (Minn.Ct.App.1984) (citing *Reuben v. Gibbs,* 297 Minn. 321, 210 N.W.2d 857 (1973)). Moreover,

[a]ll listing agreements shall be in writing and shall include:

. . . . .

E. a clear statement explaining the events or conditions that will entitle a broker to a commission;

F. Information regarding an override clause, if applicable, including a statement to the effect that *the override clause will not be effective unless the licensee supplies the seller with a protective list within 72 hours after the expiration of the listing agreement.*

Minnesota Rule 2800.3800, subp. 2 (emphasis added).

The listing agreement initially signed between appellant and respondents did not contain the contents of clause "F" nor was the protective list ever supplied by appellant to respondents. Assuming, arguendo, appellant's position that the parties, by implication, extended the listing agreement to April 18, 1983, when respondents misled appellant about their intentions, appellant still should have given respondents a protective customer list within seventy-two hours of April 18. "Licensees shall not seek to enforce an override clause unless a protective list has been furnished to the seller within seventy-two hours after the expiration of the listing agreement." Minnesota Rule 2800.3800, subp. 4 (1983). A protective list must contain the names of persons who, during the period of the listing agreement, made an affirmative show-

ing of interest in the property. Minnesota Rule 2800.3800, subp. 5 (1983). The broker or salesperson bears the burden of showing that each person on the protective list has shown an interest in the property. *Id.*

Appellant concedes that it never filed the protective customer list. Appellant argues, however, that it is entitled to the commission because it fulfilled the terms of the listing agreement and was the procuring cause of the sale. In support of this proposition, appellant cites *Spring Company v. Holle,* 248 Minn. 51, 78 N.W.2d 315 (1956). The facts in *Spring Company* are similar to those in this case. However, *Spring Company* precedes the promulgation of Rule 2800.3800, and does not apply.

■ Appellant vigorously contends that respondents should be estopped to assert appellant's failure to provide a protective list, claiming that appellant failed to provide the list due to respondents' intentional misrepresentation on April 18 that they had decided not to sell.

We do not accept appellant's legal reasoning. Appellant concedes that it had no reason to disbelieve respondents' representation on April 18 that they had decided not to sell the property and wanted to terminate the agreement. Appellant took respondents' statement at face value. The time respondents made that representation was the logical time for appellant to provide the protective customer list. Appellant should have provided the list within seventy-two hours after the expiration of the listing agreement on April 5, 1983. Even giving appellant the benefit of the doubt, in no case should the agreement have been provided later than seventy-two hours after April 18, 1983.

Appellant claims that respondents should be compelled to pay over the commission because appellant expected and earned compensation in exchange for its services in bringing together vendor and purchaser.

Unjust enrichment claims do not, however, "simply lie because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that 'unjustly' could mean illegally or unlawfully." *First National Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981). Appellant bases its unjust enrichment claim on respondents' misrepresentation. In addition, appellant claims that respondents' fraud excuses appellant's failure to provide a protective list, and that appellant is entitled to recover not only contract damages, but is, under Minn.Stat. § 549.20 (1984), also entitled to punitive damages for fraud.

■ To prove fraudulent misrepresentation, a party must show that defendant made a representation; the representation was false; the representation had to do with past or present fact; the fact was material; the fact was susceptible of knowledge; the representer knew the fact to be false or asserted the fact from his own knowledge without knowing whether it was true or false; the defendant intended to induce the other person to act or the person must have been justified in acting on it; the other person was actually induced or justified in acting on it; the other person's action was in reliance on it; the other person suffered damage; and the damage was attributable to the misrepresentation. *Weise v. Red Owl Stores, Inc.,* 286 Minn. 199, 202, 175 N.W.2d 184, 187 (1970).

■ The trial court found that respondents' misrepresentation did not cause appellant's failure to provide a protective list. Testimony indicated that the listing agreement, by its own terms, expired April 5, 1983, that there were no discussions with respect to further extension of the agreement after April 5, 1983, and that the misrepresentation, no matter how intentionally dishonest, was not made until April 18, 1983.

The trial court properly concluded that appellant's failure to provide the list within seventy-two hours of April 5, 1983, could not have been due to respondents' misrepresentation on April 18, 1983, ten days *after* the list should have been provided.

We affirm the trial court finding that the contractual relationship between appellant and respondent ended April 5th. Thus, we do not address the issue of appellant's possible damages had we found that the contractual relationship existed until April 18th, except we note that, even if a contractual relationship existed until April 18th appellant still failed to comply with the requirement that a protective customer list follow within seventy-two hours of expiration.

We hold that the trial court did not err by finding appellant's action for damages was barred by its failure to provide a protective customer list. Our decision does not condone or approve respondents' deception of appellant with the hopes of being able to avoid paying a commission. However, the Rules are specifically intended to protect homeowners. The burden is on the realtor to know these rules and prove substantial compliance. The trial court properly found that appellant failed to meet its burden of proof.

### DECISION

We affirm the trial court's dismissal of appellant's action.

Affirmed.