## G. A. BENEDICT v. F. H. PFUNDER.[1]

May 22, 1931.

No. 28,385.

[1]Reported in 237 N. W. 2.

*Edward P. Kelly* and *Woodlief Thomas,* for appellant.
*Fowler, Carlson, Furber & Johnson,* for respondent.

STONE, J.

The trial of this action having resulted in the direction of a verdict for defendant, plaintiff appeals from the order denying his motion for new trial.

Plaintiff declared on two causes of action: First, on a written contract of January 17, 1928, whereby defendant, inventor and owner of a valuable secret remedy "known as Pfunder's Stomach Tablets," promised plaintiff a commission of $100,000 for procuring "a person, persons, or corporation that is willing and able to purchase" the remedy and all rights therein for $1,000,000. The purchase price was to be payable $350,000 cash and the balance in securities acceptable to defendant. The commission promised was stated to be "for services to be rendered in said sale, transfer, or assignment." Plaintiff's agency was not exclusive. The express contract was never performed. But we must consider the case on plaintiff's evidence, ignoring wholly defendant's emphatic denial that plaintiff was a procuring cause of what followed. Plaintiff testified that he produced to defendant one Andrews and in effect that he was instrumental in opening, and assisted in carrying on,

negotiations between Andrews and defendant which ripened in May, 1928, into a new corporation called "F. H. Pfunder, Incorporated."

Andrews was a principal organizer of that corporation. Before its organization he had procured from defendant an option on the latter's remedies. and appurtenant rights. That option resulted, May 17, 1928, in a written contract between defendant and the new corporation, which gave the latter "the sole and exclusive right, license and privilege to manufacture, or cause or procure to be manufactured, and to sell, vend and deal in" defendant's remedies, and a similar right in and to all other remedies or preparations which defendant might thereafter "originate, discover or invent." Other details are unimportant except that defendant was assured a cash royalty of $4,000 per month from June to December, inclusive, of 1928, and thereafter one of $5,000, "so long as the corporation shall exist or until this contract is terminated as hereinafter provided."

To defendant was reserved the right to cancel the contract upon default for 90 days in any payment of royalty. To the corporation was given the right to take over absolutely defendant's remedy and all rights therein upon payment to him of $1,000,000. Provisions were made both in this contract and in the organization of the corporation to make it a close affair. Defendant took some stock and remained with the company as president, but subject to election as any other officer. There was a provision that if he sold any of the stock belonging to him the sum received for it should be deducted "from said purchase price of $1,000,000, in case the corporation shall exercise the option contained in this agreement." There is evidence, by way of admission against interest, that defendant considered this contract more advantageous, or at least more satisfactory, than an outright sale for $1,000,000. The assured annual income was at the rate of six per cent on that sum. There was no resulting necessity for immediate reinvestment, and complications arising from income tax problems may have been minimized.

It thus appears that plaintiff's express contract with defendant was never performed. Realizing that, plaintiff in a second cause of action, declared upon an implied contract claimed to have resulted from the action of the parties, under which it was alleged plaintiff was entitled to the reasonable value of his services. The direction of the verdict was asked and granted on the ground that the express contract covered the whole field to the exclusion of any other implied as of fact.

■ There can be no question of the right of a plaintiff, in a proper case, to declare on an express contract; and at the same time on one, covering the same transaction, implied as of fact. In such a case the worst that can happen is a compelled election, at the trial or before, between the two causes of action. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1904. The contrary implications of Ecker v. Isaacs, 98 Minn. 146, 107 N. W. 1053, are nullified by the express holding in Meyer v. Saterbak, 128 Minn. 304, 305, 150 N. W. 901. There "the complaint was upon both implied and express contract," and proof of either was admissible "so long as both allegations stood." It was not seen "how this double form of pleading imposed any unfair burden on defendant in this case." Doubt was expressed whether an election was properly compelled, citing Theodore Wetmore & Co. v. Thurman, 121 Minn. 352, 141 N. W. 481. In the instant case, plaintiff was not put to an election.

■ Going to the substantive law of it, we must consider the case on plaintiff's evidence. His testimony reduces itself in short substance to this: He first brought Andrews to defendant's attention, communicating to the latter the substance of negotiations he already had with Andrews. He finally got an offer from that gentleman and in that connection told defendant that he had been working on "this sale of his business" to Mr. Andrews, and "he finally offered this proposition to him, Mr. Andrews did." The proposition so referred to, defendant rejected. But the inference is entirely permissible from the record that he continued negotiating with Andrews, plaintiff participating, and that the result was the very advantageous transaction already sufficiently indicated.

Plaintiff's testimony made a fact issue whether he was a procuring cause of the result. The opinion of the learned trial judge does not seem to have been to the contrary. His decision was upon the narrower ground that the express contract excluded any other. That brings us to the real question for decision.

Of course, an express contract "is the exclusive source of legal rights and duties between the parties as regards the matters to which that contract pertains." 2 Street, Foundations of Legal Liability, 220. So long therefore as the field of judicial inquiry does not go beyond that of the express contract, there can be but one result if the latter has not been performed. Recovery must be denied. But it frequently happens, as on plaintiff's evidence it may have happened here, that, starting with an express contract, the parties soon and plainly, although tacitly, deliberately leave their original compact behind and so conduct themselves, one performing services or rendering benefit to the other which the latter accepts, that a promise to pay may or even must be implied from their conduct. That is, their actions rather than their words produce implications from which a new contract appears.

"Words are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise, and where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of a promise whether it is expressed (1) in writing, (2) orally, (3) in acts, or (4) partly in one of these ways and partly in others." Restatement, Contracts, American Law Institute, § 21.

The distinction between an express contract and one implied as of fact involves "no difference in legal effect, but lies merely in the mode of manifesting assent." Id. § 5. It is not the subjective thing known as meeting of the minds, but the objective thing, manifestation of mutual assent, which is essential to the making of a contract. "Not mutual assent but a manifestation indicating such assent is what the law requires." Id. § 20. Stees v. Bergmeier, 91 Minn. 513, 98 N. W. 648; Dybvig v. Minneapolis Sanatorium,

128 Minn. 292, 150 N. W. 905; Lombard v. Rahilly, 127 Minn. 449, 149 N. W. 950; Town of Balkan v. Village of Buhl, 158 Minn. 271, 197 N. W. 266, 35 A. L. R. 470.

■ It follows that, as Mr. Street continues after the above quotation [Foundations of Legal Liability, 221]

"where there is a contract to do a particular piece of work on an agreed plan at a specified price, and by mutual consent a deviation is made from the specifications, the party who does the work can recover on an implied contract where the original plan is so far abandoned that the original contract cannot be taken to cover the work in question."

Or, as stated in Wheeden v. Fiske, 50 N. H. 125, 128, the law is that

"if a man contract to work by a certain plan, and that plan be so entirely abandoned that it is impossible to trace the contract and to say to which part of the work it shall be applied, in such case the workman shall be permitted to charge by measure and value for the work done, as if no. contract had been made. * * * In such case, the original contract is no longer a guide for estimating the price of the work done and materials provided."

The condition precedent to recovery in such cases on the later implied as distinguished from the earlier express contract, has been thus stated here:

"To entitle a party to recover for part performance or for performance in a different. way from that contracted for, his contract remaining open and unperformed, the circumstances must be such that a new contract may be implied from the conduct of the parties to pay a compensation for the partial or substituted performance." Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52.

That principle, well and long established, entitled plaintiff to go to the jury on the issue of implied contract. True, there was no sale as called for by the original contract. But equally true is the disposition by defendant of his property upon a basis highly bene-

ficial to him. So, if it could be reasonably concluded that plaintiff was the procuring cause and that the original contract, expressed in writing, was superseded by another expressed by conduct, that is, if plaintiff performed his services for defendant at the latter's instance and request or with his consent under circumstances implying a promise to pay, recovery on quantum meruit would necessarily follow.

If one hires a broker to sell his real estate, and an express contract conditions the broker's commission upon the procurement of a stipulated net price, there of course can be no recovery on that contract unless it is performed. But if the broker, attempting in good faith to perform his express contract, produces to the owner a person first advanced as a possible buyer, but who later, with the continued participation of the broker as a procuring cause, leases the real estate for a long term and upon conditions as advantageous to the owner as the sale first wanted, certainly the broker as matter of law will not be denied compensation simply because his original contract was not performed. So also, if one hires a contractor to erect a building of a given type, and performance at first proceeds under the contract but later, by terms tacitly agreed upon by both parties, an entirely different structure results, the contractor will not be denied compensation because the original contract was not performed. The foregoing are hypothetical applications of the rule as already stated in Wheeden v. Fiske, 50 N. H. 125, and Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52. That rule, applied to this case, leads irresistibly to the conclusion that plaintiff was entitled to go to the jury on his second cause of action on an implied contract.

It just so happens that the rule we invoke has produced more legal literature in connection with building contracts than any other one kind. But there is no peculiar law of contract applicable in that field not equally so in any other. Building contracts are peculiar only in that the owner is ordinarily compelled to accept the resulting structure however much he may dislike it. It is on his land, and it is not practical for him to insist on its removal.

In such a case, if there has been no new contract and the original express contract has not been substantially performed, it seems, on strict principle, that there should be no recovery. Hoglund v. Sortedahl, 101 Minn. 359, 112 N. W. 408; Johnson v. Fehsefeldt, 106 Minn. 202, 118 N. W. 797, 20 L.R.A.(N.S.) 1069. Yet it is sometimes permitted, but solely on a quasi contractual obligation (in which there is no element of contract, express or implied) to compensate for what otherwise would be an unconscionable enrichment of the owner at the expense of the contractor. See annotation (of Huyett & Smith Mfg. Co. v. Chicago Edison Co. 167 Ill. 233, 47 N. E. 384) in 59 A. S. R. 272, 277 (291); Britton v. Turner, 6 N. H. 481, 26 Am. D..713; Hillyard v. Crabtree's Admr. 11 Tex. 133, 62 Am. D. 475; O. C. Gove & Co. v. Island City M. & M. Co. 19 Or. 363, 24 P. 521; Keener, Quasi-Contracts, c. IV. Compare Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584.

This is not a case of an entire contract, without any other disclosed by pleading or proof, as was Bentley v. Edwards, 125 Minn. 179, 146 N. W. 347, 51 L.R.A.(N.S.) 254, Ann. Cas. 1915C, 882, much relied upon by defendant. That action was on an entire, express contract, nothing more. Performance being incomplete, there was no recovery. The plaintiffs had not declared at all on quantum meruit. That question not having been presented, consideration of it was expressly declined here. Hence that case helps defendant not at all. So also Marshall v. Anderson, 166 Minn. 163, 207 N. W. 193, is not in point for the simple and obvious reason that the plaintiff had declared on but one cause of action and that on express contract. There was no proof of performance of that one, and no other contract was pleaded. So as matter of course the judgment of dismissal was right and affirmed here.

Holcomb v. Stafford, 102 Minn. 233, 113 N. W. 449, like Ames v. Lamont, 107 Wis. 531, 83 N. W. 780, is but another case where there was only an express contract which was not performed. That feature distinguishes all such cases from this, wherein the evidence opens itself to the conclusion that, historically, there have been two contracts. There is no question about the first one in writing.

But there is a question, and it is for the appropriate trier of fact to answer, whether, successor to the written contract, there was another, expressed only by the conduct of the parties, and therefore as a matter of legal habit and convenient terminology, called a contract implied as of fact. It was error to take from the jury the issues as to the making of that contract and its performance by plaintiff. In consequence there must be a new trial.

Order reversed.

HILTON, J. (dissenting).

I dissent. The complaint declared on two causes of action. The first was on an express contract in writing (a copy of which was attached to the complaint as exhibit A) alleging the performance thereof and demanding $100,000. The second realleged practically everything contained in the first and also set forth an arrangement (appearing in the evidence as exhibit C) eventually made by defendant with F. H. Pfunder, Incorporated, a corporation later organized. It was also alleged therein that the arrangement was made, brought about, and consummated through plaintiff's efforts and in pursuance of the contract referred to in the first cause of action and that therefore plaintiff had earned a fair and reasonable compensation of $100,000 for such services. The substance of the express contract is stated in the majority opinion.

Defendant in his answer admitted the express contract but denied performance of the terms and conditions thereof; he also denied the implied contract or quantum meruit allegations of the second cause of action.

Exhibit A constituted an entire contract. To recover thereon it was necessary for plaintiff to prove performance thereof on his part. The majority opinion admits that the express contract was never performed. I concede that great liberality is allowed by permitting a complaint to declare on an express contract and also on an implied one inconsistent therewith.

If the answer had denied both the express contract and the implied one, a record might have been made presenting a fact issue for the determination of a jury. There could not here however be

both an admitted express contract and an implied one upon which recovery could be had. When there is only an express contract involved, recovery must be had on it or not at all. On the record that is the situation in this case. The express contract covered the entire field. There was no room for the consideration of an inconsistent cause of action based upon an implied contract. Plaintiff could not recover on both. Plaintiff's admission of the express contract resulted in eliminating an implied contract and left the case as though it had not been pleaded.

The majority opinion relies largely on Meyer v. Saterbak, 128 Minn. 304, 150 N. W. 901, and quotes therefrom as follows: "There 'the complaint was upon both implied and express contract,' and proof of either was admissible 'so long as both allegations stood.'" It is to be noted however that in the instant case both allegations did not stand; the second was gone when the pleadings closed.

I think the trial court was correct in holding that the parties were bound by the express contract and that if plaintiff was entitled to recover at all it would be for $100,000 thereunder. The exclusion of evidence offered to prove the reasonable value of plaintiff's services was proper. Evidence as to work done by plaintiff on the proposition of sale prior to the execution of exhibit A was not admissible. N. W. Marble & Tile Co. v. Swenson, 139 Minn. 365, 166 N. W. 406; Marshall v. Anderson, 166 Minn. 163, 207 N. W. 193; Ames v. Lamont, 107 Wis. 531, 83 N. W. 780.

Plaintiff was a cousin of defendant and was regularly employed by him in connection with the tablet business at a weekly compensation of $50. That employment continued until the handling of the product was taken over by F. H. Pfunder, Incorporated, at which time plaintiff continued with it in the same kind of employment until sometime in October, 1928, at the same rate of compensation. Plaintiff was not in any way engaged in a brokerage business or in buying and selling for others on a commission or other basis.

A comparison of exhibit A with exhibit C shows conclusively that there was neither a full nor a substantial compliance with the

terms of the former. It cannot be otherwise contended. The former requires the sale of the property for $1,000,000, of which $350,000 was to be cash. The lengthy royalty arrangement made in exhibit C was not in any sense a sale of the property. It was not sold. It still remained the property of defendant. The formula, process of manufacture, etc. were placed in escrow with a trust company. They still belonged to and will remain the property of defendant until, if ever, $1,000,000 is paid him. Plaintiff never complied with the terms of exhibit A. There is no allegation or proof of fraud, collusion, or subterfuge by either party to exhibit C. Defendant in no way prevented plaintiff from performing exhibit A.

Exhibit A was not an exclusive contract. Defendant reserved the right to sell the property himself or otherwise to dispose of it. Exhibit A remained in full force and effect as originally executed; there was no modification of it either by mutual consent or otherwise. Plaintiff did not make good on its terms either in whole or in part and is not entitled to recover anything.

Irrespective of the work done by plaintiff, he never secured an offer of a purchase from Andrews or anyone else. All work done by plaintiff with Andrews was prior to January 17, 1928, the date of the execution of exhibit A. Nothing resulted therefrom. The rejected offer of Andrews was brought by plaintiff to defendant in August, 1927, and it was not an offer to purchase.

I have no quarrel with the holdings in cases cited in the majority opinion; but, considering the facts in those cases, I do not think they are applicable here. Further, after considering, as we should, the case on plaintiff's evidence, I am persuaded that he did not in any sense procure the corporation to enter into exhibit C. An inference that he was the procuring cause is not warranted; there was nothing for submission to the jury. I am constrained to the view that the conclusion reached by the trial court was correct and that there should be an affirmance.