**The REALTY HOUSE, INC.,
Respondent,**

v.

**Thomas J. GRIMM, et al., Appellants.**

**No. C7–90–739.**

Court of Appeals of Minnesota.

Oct. 2, 1990.

Loren E. Gross, Christian and Gross, Minneapolis, for respondent.

James T. Martin, Gislason, Martin & Varpness, P.A., Edina, for appellants.

Considered and decided by LANSING, P.J., PARKER, and LOMMEN *, JJ.

## OPINION

LANSING, Judge.

This is an action by a realtor to recover a commission on the sale of a house. The trial court held that because a purchase agreement was in effect at the time the listing agreement expired, the cancellation of that agreement and the realtor's failure to provide a protective list did not defeat the realtor's claim to a commission on a later sale to the same buyer. We hold that an override clause cannot be enforced to collect a commission if a realtor fails to provide a protective list after the expiration of a listing agreement.

## FACTS

Thomas and Suzanne Grimm listed their home for sale with Realty House, Inc. in July 1986 for the price of $185,000. On December 1, 1986, it was relisted for $159,-900. The listing agreement provided for a realtor's commission in either of two events. First, the listing agreement provided:

---

* Acting as judge of the Court of Appeals by ap-

I will pay you as your commission 7 percent of the selling price if I sell or agree to sell the property before this contract ends.

Second, the agreement contained a standard "override clause":

If within 60 days after the end of this contract, I sell or agree to sell this property to anyone who:

\* \* \* \* \* \*

(2) During this contract made an affirmative showing of interest in the property or was physically shown the property by you and whose name is on a written list you give me within 72 hours after the end of the contract, then

I will still pay you your commission on the selling price, even if I sell the property without your assistance.

Arne Hill, an independent real estate broker, viewed the Grimm home on his own in March 1987. After briefly looking around the house, he said, "I'll take it." He wrote out a purchase agreement for $159,000 and the Grimms signed it. Because Hill was a licensed real estate broker, Realty House agreed to share 3.15% of its 7% commission with him. Closing was scheduled for July 1, 1987.

On April 1, 1987 the listing agreement between the Grimms and Realty House expired. Realty House did not provide the Grimms with a list of individuals who had shown interest in or been shown the property.

During April 1987, Hill hired an electrician, a structural engineer and an air conditioning expert to inspect the house. These experts provided Hill with written reports describing serious and costly defects in the house. As a result, Hill demanded that Realty House cancel the purchase agreement and return his earnest money. Realty House agreed, provided that Hill make a written demand for cancellation and produce written reports from the inspectors. Although the Grimms did not see the inspectors' reports, they agreed to cancel the

pointment pursuant to Minn. Const. art. VI, § 2.

purchase agreement after talking to Regan Massee, a Realty House broker.

The listing agreement had expired before the cancellation, and the Grimms and Massee discussed relisting the home with Realty House. Massee told the Grimms that their house would now be difficult to sell without a substantial price reduction. Even at a reduced price, he explained, all the possible defects· must be disclosed to potential buyers. The Grimms told Massee that they would attempt to sell the house on a "C/D FSBO" basis (contract for deed for sale by owner).

On May 21, 1987, Realty House, Hill and the Grimms signed a formal cancellation agreement. The same day, the Grimms and Hill renegotiated a new purchase agreement. The total purchase price of the new agreement was $23,400 less than the cancelled purchase agreement. Hill asked that the title be transferred, for tax purposes, to his mother. The Grimms and Hill's mother signed a purchase agreement. On May 29, the Grimms executed and delivered a warranty deed to Hill's mother.

Realty House brought this action against the Grimms and Hill to recover a commission on the sale of the house. Realty House dismissed its claim against Hill after he filed for bankruptcy. The trial court held that the Grimms had a contractual obligation to pay a commission to Realty House even though Realty House failed to provide a protective list after the listing agreement expired. The Grimms appeal.

### ISSUE

May a real estate company which failed to deliver a protective list after the expiration of a listing agreement, because a purchase agreement had been signed, enforce an override clause and recover a commission on a later sale?

### ANALYSIS

#### I.

Under the listing agreement, Realty House was entitled to a commission if the Grimms sold or agreed to sell their house before the listing agreement expired. The original purchase agreement between Hill and the Grimms was signed before the agreement expired. Had the agreement continued in effect, Realty House would be entitled to its commission. The purchase agreement was not enforced because it was terminated by a written cancellation agreement signed by Hill, the Grimms and Realty House. The new purchase agreement was not signed within the listing period and, consequently, is not covered by this provision. We recognize that a cancellation induced by fraud may not defeat a commission, but fraud was neither pleaded nor found and both parties argue that the override clause governs their rights under the second purchase agreement.

#### II.

The override agreement is regulated by the Minnesota Rules Relating to Real Estate:

> Licensees shall not seek to enforce an override clause unless a protective list has been furnished to the seller within 72 hours after the expiration of the listing agreement.

Minn.R. 2805.1200, subpt. 4 (1989). This court applied Rule 2805.1200 to similar facts in *Lynn Beechler Realty Co. v. Warnygora*, 396 N.W.2d 717 (Minn.App.1986). In *Beechler*, the respondents signed a purchase agreement containing a standard override clause. The agreement expired on April 5 and the realtor failed to provide a protective list within 72 hours. On April 18, the respondents entered into a purchase agreement to sell their home. That same day, they called the realtor and asked that the realtor remove its sign from their yard because they had decided not to sell their home. The realtor brought an action for commission. The trial court dismissed the complaint and this court affirmed, citing Minn.R. 2800.3800, subpt. 4 (1983) (renumbered as 2805.1200). *Id.* at 719.

Realty House concedes that it did not file a protective list. It argues, however, that it is entitled to a commission because it had no reason to believe the first purchase agreement would not be finalized and, therefore, saw no need to file a protective list. In most instances, contemplated sales will proceed as planned and commissions

will be properly protected without a list. We cannot agree, however, that a cancelled purchase agreement can substitute for the required protective list.

Rule 2805.1200 expressly provides that when a listing agreement expires, a realtor must provide the seller with a protective list if it wishes to retain its commission. We recognize that the application of this rule may seem harsh when a realtor has earned a commission, or when, as in *Beechler*, there is misrepresentation or deception. However, the policy considerations behind the Rules Relating to Real Estate support a strict application. As we explained in *Beechler*:

> [T]he Rules are specifically intended to protect home owners. The burden is on the realtor to know these rules and prove substantial compliance.

*Beechler*, 396 N.W.2d at 721. The burden of producing a protective list is not great. The realtor is familiar with real estate rules, knows when the listing agreement expires, has the information the protective list requires, and is accustomed to providing such lists.

Thus, even if a purchase agreement has been signed when the listing agreement expires, a realtor wishing to protect its commission should provide the homeowner with a protective list. If the purchase agreement survives to closing, the realtor is contractually entitled to its commission because an agreement to sell was reached during the existence of the listing agreement. If, on the other hand, the purchase agreement is cancelled, the realtor can enforce the override clause and recover a commission on a sale to a buyer whose name appears on the protective list.

### DECISION

A realtor who fails to deliver a protective list after the expiration of a listing agreement may not enforce an override clause to recover a commission on a subsequent sale of the property.

Reversed.