**Stephen KROGNESS, individually and d/b/a Krogness Real Estate and Krogness Investments, Appellant,**

v.

**BEST BUY CO., INC., Respondent.**

**No. C3–94–861.**

Court of Appeals of Minnesota.

Nov. 29, 1994.

---

James H. Gilbert, Meshbesher & Spence, Ltd., Minnetonka, for appellant.

Mark D. Wisser, Alfred H. Edwall, Jr., Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondent.

Considered and decided by PETERSON, P.J., and LANSING and HUSPENI, JJ.

## OPINION

PETERSON, Judge.

On appeal from a summary judgment, Stephen Krogness argues that the district court erred in (1) finding that he was not entitled to a commission on a real estate sale under the parties' express contract or under theories of implied contract or quasi-contract and (2) granting summary judgment when a fact dispute existed as to whether respondent Best Buy Company breached the parties' contract. We affirm.

## FACTS

Appellant Stephen Krogness is a licensed real estate broker. Krogness and respondent Best Buy Company signed a listing agreement granting Krogness the nonexclusive right to sell several Best Buy stores to Cremer Industries, Inc. (CII). Best Buy agreed to pay Krogness a commission of 2% of the sales price if CII bought the stores and the closing was held before the listing agreement expired on October 1, 1992 or before the 180–day–override period expired in March 1993. Best Buy also reserved

> the right to retain the property, sell the Property itself, or to or through any other Broker to whom [Best Buy] has granted a non-exclusive listing, to any Buyer other than above named prospect submitted to [Best Buy] directly by [Krogness].

On the printed contract form that included this clause, Best Buy had crossed out the words "or indirectly" after the word "directly."

In a March 1992 letter to Best Buy, Krogness identified his clients as Corporate Realty Capital (CRC)/Bob Nessen and CII and stated that Best Buy had agreed to pay him a commission in the event of a sale of its properties to any of these clients.

Although CRC was interested in buying the stores and helped Best Buy obtain $32.8 million in preapproved mortgage financing, the two companies could not reach an agreement. CRC then introduced Best Buy to W.P. Carey Co. and BB Properties (BB), a limited partnership whose general partners were affiliated with W.P. Carey. CRC, Nessen, and CII had no ownership interest in BB, BB's general partners, or W.P. Carey.

On April 19, 1993, Best Buy sold the properties for $46 million to BB. CRC acted as a broker for the sale.

After the sale, Krogness billed Best Buy for a $528,000 commission. When Best Buy refused to pay, Krogness sued Best Buy for breach of contract and unjust enrichment. Krogness claimed that Best Buy owed him a commission because he told CII to introduce Best Buy to CRC and his efforts led Best Buy to the buyer.

Krogness also claimed that he expected to be paid even if his identified clients did not buy the properties because Best Buy asked him to send information about the properties to the mortgage financier and never told him to stop working. Krogness submitted an expert affidavit to support his claim that it was customary in the industry to pay a broker the reasonable value of his services when the services were substantial and helpful to the consummation of the transaction even if the sale closed after the override period expired. Finally, Krogness argued that on April 7, 1992, Best Buy breached the listing agreement by giving CRC the exclusive right to sell the properties.

Best Buy moved for summary judgment and argued that Krogness was not entitled to a commission because he did not directly submit the buyer to Best Buy as the listing agreement required and the sale closed after the listing agreement and the override period expired. Best Buy also argued that the existence of the express listing agreement and the written agreement requirement in Minn. Stat. § 82.33, subd. 2 (Supp.1993) barred recovery under an unjust enrichment or implied contract theory.

The district court granted summary judgment for Best Buy on all of Krogness's claims. The court held that Krogness was not entitled to a commission under the contract because the property was not sold to his designated clients or to anyone that he directly recruited. The court found that Krogness was not entitled to recover under an unjust enrichment theory because an express contract existed as to the same subject matter. Finally, the court concluded that Krogness had no implied contract claim because he had not shown that no genuine fact issue existed as to whether the parties left the original contract behind or whether there was a meeting of the minds sufficient to create an implied contract.

## ISSUES

I. Was Krogness entitled to a commission under the terms of the listing agreement?

II. Was Krogness entitled to a commission under an implied contract or quasi-contract theory?

III. Did a genuine fact issue preclude summary judgment on Krogness's claim that Best Buy breached the contract by granting another broker the exclusive right to sell the property?

## ANALYSIS

On appeal from a summary judgment, we must examine the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This court must view the evidence in the light most favorable to the nonmoving party. *Id.* However, the nonmoving party cannot rely on the pleadings alone to defeat a summary judgment motion but instead must produce specific facts which establish the existence of a genuine issue for trial. *Johnson v. Van Blaricom*, 480 N.W.2d 138, 140 (Minn.App. 1992).

### I.

"A broker is entitled to his commission when he has performed all that he undertook to perform." *Greer v. Kooiker*, 312 Minn. 499, 510, 253 N.W.2d 133, 141 (1977). "This rule, of necessity, depends on the agreement of the parties." *Olson v. Penkert*, 252 Minn. 334, 342, 90 N.W.2d 193, 200 (1958). Absent ambiguity, the construction of a contract is a question of law. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979).

The contract between Krogness and Best Buy required Krogness to directly submit the buyer to Best Buy to earn a commission. It is undisputed that Krogness's identified clients did not buy the properties. Krogness also admits that he had no contact with BB, the eventual buyer of the properties, with BB's general partners, or with W.P. Carey. As Krogness had no contact with BB, he could not have directly submitted the buyer of the properties to Best Buy. Krogness therefore failed to perform all that

he undertook to perform under the listing agreement and consequently was not entitled to a commission under the listing agreement.

■ Krogness argues that the word "directly" in the listing agreement is ambiguous because it also could be construed to include any buyer whose procurement could be traced in any way to his efforts. A word that is reasonably susceptible of more than one meaning is ambiguous. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). Whether a word is ambiguous is a question of law. *Id.*

■ The term "direct" is not ambiguous. "Direct" is defined as:

Immediate; proximate; by the shortest course; without circuity; operating by an immediate connection or relation, instead of operating through a medium; the opposite of indirect.

*Black's Law Dictionary* 459 (6th ed. 1990). The term "direct" in the listing agreement can only mean that Krogness had to be the immediate cause of the buyer's introduction to Best Buy to earn his commission. Best Buy's deletion of the phrase "or indirectly" from the agreement is further evidence that the word "direct" is not reasonably susceptible of Krogness's proposed construction.

■ Krogness also argues that language in the mortgage agreement showed that CRC actually bought the properties, that Best Buy waived its right to insist on his direct procurement of a buyer by accepting CRC and Nessen as his clients, and that Best Buy acted in bad faith by structuring the sale to prevent CRC from owning part of the properties. Krogness did not raise any of these issues before the district court. Matters not presented to and decided by the district court will not be considered on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Accordingly, we will not address these issues.

## II.

■ "A contract implied in fact is one inferred from the circumstances and conduct of the parties." *Gryc v. Lewis*, 410 N.W.2d 888, 891 (Minn.App.1987). Parties who have an express contract may leave that agreement behind and so conduct themselves that

a new contract must be implied from their behavior. *Benedict v. Pfunder*, 183 Minn. 396, 400, 237 N.W. 2, 4 (1931).

But under Minn.Stat. § 82.33, subd. 2 (Supp.1993), no real estate broker

shall be entitled to or may bring or maintain any action in the courts for any commission, fee or other compensation with respect to the purchase, sale, lease or other disposition or conveyance of real property, or with respect to the negotiation or attempt to negotiate any sale, lease or other disposition or conveyance of real property unless there is a written agreement with the [real estate broker].

*See also* Minn.R. 2805.1200, subpts. 1–2 (1991) (requiring broker to obtain written listing agreement before offering property for sale and identifying terms that must be included in agreement); 1993 Minn.Laws ch. 309, § 7 (enacting provisions of Minn.R. 2805.1200, subpts. 1–2 into law) (effective Oct. 1, 1993, 1993 Minn.Laws ch. 309, § 33) (codified at Minn.Stat. § 82.195); *Mulholland v. Ferber*, 359 N.W.2d 321, 323 (Minn. App.1984) (broker could not collect commission when purchase option was exercised after listing agreement expired).

■ The written agreement requirement in Minn.Stat. § 82.33, subd. 2 would be frustrated if a real estate broker could recover compensation under an implied in fact contract theory because this theory permits a broker to bring an action for a commission without having a written agreement. To recover a commission under an implied in fact contract theory, the broker would have to show that any express written agreement between the parties had been abandoned and replaced with an implied contract. *See Reese Design, Inc. v. I–94 Highway 61 Eastview Ctr. Partnership*, 428 N.W.2d 441, 446 (Minn. App.1988) (no implied contract can exist when express contract concerning same subject is in effect); *Benedict*, 183 Minn. at 400, 237 N.W. at 4 (no implied contract unless parties leave express contract behind). Thus, to give effect to the provisions of Minn. Stat. § 82.33, subd. 2, a broker cannot recover a commission or any other compensation under an implied in fact contract theory.

In *Benedict*, 183 Minn. at 402, 237 N.W. at 5, the supreme court suggested in dicta that an express contract between a real estate broker and a seller could be replaced by an implied contract. But *Benedict* was decided before the enactment of Minn.Stat. § 82.33, subd. 2 and therefore no longer applies. *See Lynn Beechler Realty Co. v. Warnygora*, 396 N.W.2d 717, 719–20 (Minn.App.1986) (broker who did not comply with requirements of Minn.R. 2805.1200, 2800.3800, renumbered could not collect commission and case allowing collection of commission under similar facts decided before promulgation of rule no longer applied).[1]

█ The written agreement requirement in Minn.Stat. § 82.33, subd. 2 also would be defeated if a broker could recover compensation under an unjust enrichment or quasi-contract theory. To recover under this theory, a broker would have to show that no written agreement existed between the parties. *See Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn.1984) (no recovery under quasi-contract theory when express contract on same subject existed). Thus, to give effect to the terms of Minn.Stat. § 82.33, subd. 2, a broker cannot recover compensation under a quasi-contract theory.

## III.

█ Krogness argues that the district court erred in granting summary judgment because a fact dispute exists as to whether Best Buy's April 1992 exclusive agreement with CRC breached the listing agreement with him. The district court did not explain why it granted summary judgment on this issue. However, we will affirm a summary judgment if it can be sustained on any grounds. *Myers through Myers v. Price*, 463 N.W.2d 773, 775 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 4, 1991).

█ A condition precedent

is any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract.

*National City Bank v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 176 (Minn. 1989). There can be no breach of contract if the event required by the condition precedent does not occur. *Id.* Here, there was no breach of contract because Krogness did not fulfill the condition precedent in the listing agreement by directly producing a buyer.

Krogness argues the listing agreement was breached because Best Buy caused his nonperformance of the condition precedent. *See Olson*, 252 Minn. at 343, 90 N.W.2d at 200 (party who caused nonperformance of condition precedent may not raise nonperformance of condition as defense to breach of contract). Krogness claims that once Best Buy signed the exclusive agreement with CRC, he could not have negotiated the sale of the property with Best Buy if he had known of that agreement. *See* Minn.R. 2805.1600, subpt. 6 (1991) (broker shall not negotiate sale of any real property with owner knowing that owner has exclusive listing agreement with another agent).

█ But Krogness has not submitted any evidence showing that his failure to directly produce a buyer was caused by Best Buy's exclusive agreement with CRC. Thus, Krogness failed to establish that a fact dispute existed regarding whether Best Buy caused the nonperformance of the condition precedent. Accordingly, the district court properly granted summary judgment for Best Buy on the breach of contract claim.

## DECISION

As Krogness did not directly submit the buyer to Best Buy, he was not entitled to recover a commission under the parties' listing agreement. Krogness could not collect compensation under either an implied in fact or a quasi-contract theory because Minn.Stat. § 82.33, subd. 2 requires that, to bring an action for a commission or other compensation, a broker must have a written agreement. Since Krogness did not directly produce a buyer to fulfill the condition precedent in the listing agreement and did not show

---

1. Krogness claims that Best Buy never raised the written agreement requirement before the district court. But the record shows that Best Buy discussed this requirement at the summary judgment hearing and in its posthearing submissions.

that a fact dispute existed as to whether his failure to perform was caused by Best Buy, he had no breach of contract claim. The district court properly granted summary judgment for Best Buy on Krogness's claims.

**Affirmed.**