# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A14-1719

Cityscapes Development, LLC,
Appellant,

vs.

Larry Scheffler, et al.,
Respondents.

**Filed June 15, 2015**
**Affirmed**
**Smith, Judge**

Clay County District Court
File No. 14-CV-13-2584

Jon R. Brakke, Caren L. Stanley, Vogel Law Firm, Fargo, North Dakota (for appellant)

Mark R. Hanson, Charlotte J. Skar, Nilles Law Firm, Fargo, North Dakota (for respondents)

Considered and decided by Hudson, Presiding Judge; Kirk, Judge; and Smith, Judge.

## S Y L L A B U S

Real estate licensees must strictly comply with Minn. Stat. § 82.66, subd. 1(d)(1) (2014) by providing a protective list to the seller within 72 hours of the listing agreement's expiration to enforce an override clause in a listing agreement.

## O P I N I O N

**SMITH**, Judge

We affirm the district court's grant of summary judgment to respondents because, as a matter of law, appellant is not entitled to a commission.

# FACTS

Respondents Larry and Helen Scheffler, as Trustees of the Scheffler Family Trust, Robert Groesbeck, and Mary Groesbeck retained appellant Cityscapes Development, LLC, to sell certain real property in April 2010. After their first listing agreement expired, the parties entered a second listing agreement in April 2011. Respondents agreed to pay appellant a five percent commission if appellant "negotiate[d] an exchange or sale of the property during the duration of this agreement." The second listing agreement contained the override clause that is at issue in this case. It states:

> CUSTOMER PROTECTION: In the event the property is sold/leased/exchanged within 180 days after the expiration of this agreement to any person or entity involving any of the people introduced to the property by [appellant] either directly or indirectly through cooperating BROKERS, during the term of this agreement, a full commission shall be due and payable.

> MINNESOTA ONLY: In order to obtain customer protection, the agent must notify owner, within 72 hours of the expiration of the listing, the names of all of the prospects that are protected.

In May 2011, respondents sold part of the property and paid appellant the commission due. At some point in summer 2011, appellant contacted Pheasants Forever, Inc. about purchasing the rest of the property, but Pheasants Forever made no offer before the second listing agreement expired on August 19, 2011.

On October 3, 2011, Larry Scheffler sent a letter to appellant titled "Notice of Termination of Listing Agreement." Scheffler stated:

> This will confirm that my partner and I have decided not to renew the listing agreement with [appellant] pertaining to the above-referenced parcels, effective as of the expiration of the

2

original listing term. Inasmuch as you have contacted representatives of Pheasants Unlimited regarding purchase of the subject parcels, this will confirm that we agree to pay the agreed-upon commissions should your contact result in a sale. I am unaware of any contacts/negotiations regarding other potential buyers. Should I be mistaken in this regard, please let me know immediately.

Should you have any questions regarding the above, or the subject parcels in general, please feel free to contact me.

On October 14, 2011, Pheasants Forever contacted appellant to express interest in purchasing the remaining property. Appellant forwarded documents to Larry Scheffler to facilitate an appraisal and emailed respondents and Pheasants Forever regarding a survey of the property. But Pheasants Forever still did not submit an offer to respondents. Unhappy with the lack of offers on the property, respondents hired a new real estate agent to advertise and sell the property by auction. In response to an inquiry from appellant, respondents indicated that they would consider an offer from Pheasants Forever prior to the auction date.

On January 13, 2012, Pheasants Forever submitted an initial bid to respondents with the understanding that the ten highest bidders would be invited to make final bids on January 21, 2012. On February 8, 2012, respondents and Pheasants Forever entered into a purchase agreement. This purchase agreement was signed within 180 days of the expiration of the second listing agreement. After addressing title issues and surveying the property, respondents and Pheasants Forever closed on December 31, 2012.

In August 2013, appellant sued, seeking a commission of $42,800. Appellant then moved for summary judgment, arguing that it was entitled to a commission based on the

180-day override clause in the second listing agreement or its reliance on Scheffler's October 3, 2011 letter. Respondents also moved for summary judgment.

Following a hearing, the district court granted respondents' motion for summary judgment and denied appellant's motion. The district court determined that appellant was not entitled to a commission under the listing agreement and override clause because appellant failed to provide a protective list to respondents. The district court also determined that appellant was not entitled to a commission based on Scheffler's letter because the letter did not include essential terms and there was no consideration. Finally, the district court rejected any equitable theories of relief.

## ISSUES

I. Did the district court err by concluding that appellant is not entitled to a commission under the second listing agreement and override clause?

II. Did the district court err by concluding that appellant is not entitled to a commission under the October 3, 2011 letter?

## ANALYSIS

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from an award of summary judgment, this court reviews de novo whether there is a genuine issue of material fact and whether the district court erred when it applied the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn. 2002). We "view the evidence in the light most favorable to the party against whom summary judgment was

4

granted." *Id.* at 76-77. Like the construction of a statute, the construction of a contract is generally a question of law that appellate courts review de novo. *Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 324 (Minn. 2004). But the interpretation of an ambiguous contract provision is a question of fact, *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003), reviewed for clear error, *see* Minn. R. Civ. P. 52.01.

## I.

Appellant first argues that it is entitled to a commission under the override clause in the second listing agreement.

An override clause is "a provision in a listing agreement or similar instrument allowing the broker to receive compensation when, after the listing agreement has expired, the property is sold to persons with whom a broker or salesperson had negotiated or shown the property prior to the expiration of the listing agreement." Minn. Stat. § 82.55, subd. 13(1) (2014). If a listing agreement contains an override clause, it must "includ[e] a statement to the effect that the override clause will not be effective unless the licensee supplies the seller with a protective list within 72 hours after the expiration of the listing agreement." Minn. Stat. § 82.66, subd. 1(b)(7) (2014). This statement is required because "[l]icensees shall not seek to enforce an override clause unless a protective list has been furnished to the seller within 72 hours after the expiration of the listing agreement." *Id.*, subd. 1(d)(1).

A protective list is a "written list of names and addresses of prospective buyers with whom a licensee has negotiated the sale or rental of the property or to whom a

5

licensee has exhibited the property before the expiration of the listing agreement." Minn.

Stat. § 82.55, subd. 16(1) (2014).

> A broker or salesperson has the burden of demonstrating that each person on the protective list has, during the period of the listing agreement, either made an affirmative showing of interest in the property by responding to an advertisement or by contacting the broker or salesperson involved or has been physically shown the property by the broker or salesperson.

Minn. Stat. § 82.66, subd. 1(e) (2014).

The parties' second listing agreement contained both an override clause and the required protective-list language. *See id.*, subd. 1(b)(7). But it is undisputed that appellant failed to provide a protective list to respondents within 72 hours of the expiration of the second listing agreement. *See id.*, subd. 1(d)(1).

Appellant argues that section 82.66, subdivision 1(d)(1) does not require strict compliance and that substantial compliance can instead fulfill the protective-list requirement. In *Burnet Realty, Inc. v. Monson*, a real estate agent provided a protective list with the name of another real estate agent, rather than the names of the prospective purchasers.[1] 479 N.W.2d 432, 433 (Minn. App. 1992). The real estate agency argued substantial compliance with the protective-list requirement. *Id.* at 434. We disagreed because the statute did not "mention substituting the names of the realty sales people for the names and addresses of prospective purchasers." *Id.* As a result, we declined to

---

[1] We note that caselaw uses the term "realtor," which is defined as "a real-estate agent affiliated with the National Association of Realtors." *The American Heritage Dictionary* 1465 (5th ed. 2011). Because not all real estate agents are realtors, we use the term "real estate agent" throughout this opinion.

address the real estate agency's substantial-compliance argument because "there was no substantial compliance with the 'protective list' rule in this case." *Id.*

As support for its substantial-compliance argument, appellant cites a case in which the supreme court adopted a holding from this court that the statutory requirements for a listing agreement could be satisfied by substantial compliance. *See Rosenberg*, 685 N.W.2d at 325 (citing a previous version of the statute); *see also* Minn. Stat. § 82.66, subd. 1(b) (2014) (providing the current listing-agreement requirements). Appellant argues that, because substantial compliance applies to the listing-agreement requirements in section 82.66, subdivision 1(b), it must also apply to the protective-list requirement in section 82.66, subdivision 1(d)(1). But no caselaw has applied substantial compliance to the prospective-list requirement in subdivision 1(d)(1), and we decline to do so here.

Contrary to appellant's assertion, our caselaw indicates that the protective-list requirement in subdivision 1(d)(1) is strictly construed. In *Realty House, Inc. v. Grimm*, a real estate agency argued that it was entitled to a commission even though it failed to provide a protective list because there was a signed purchase agreement and there was no need to file a protective list. 460 N.W.2d 917, 919 (Minn. App. 1990). We disagreed and determined that the real estate agency had the burden to provide a protective list, even when a purchase agreement had been signed. *Id.* at 920. We held that a real estate agent "who fails to deliver a protective list after the expiration of a listing agreement may not enforce an override clause to recover a commission on a subsequent sale of the property." *Id. Grimm* is clear that a real estate agent must provide a protective list to the seller to enforce an override clause. *See id.*; *see also Douglas v. Schuette*, 607 N.W.2d

7

142, 146 (Minn. App. 2000) (stating that "a purchase agreement cannot substitute for a protective list" and that a real estate agent cannot enforce an override clause after he "failed to provide a protective list within the statutory period"), *review denied* (Minn. May 16, 2000).

We hold that, to enforce an override clause in a listing agreement, a licensee must strictly comply with the protective-list requirement in section 82.66, subdivision 1(d)(1). The statute is unambiguous and provides clear notice that an override clause is unenforceable without a protective list. *See* Minn. Stat. § 82.66, subd. 1(d)(1) ("Licensees *shall not* seek to enforce an override clause unless a protective list has been furnished to the seller within 72 hours after the expiration of the listing agreement." (emphasis added)). Because appellant failed to provide any protective list to respondents, appellant did not strictly comply with section 82.66, subdivision 1(d)(1) and is therefore not entitled to a commission under the override clause.

We also note that the parties signed a contract stating that appellant "must notify [respondents], within 72 hours of the expiration of the listing, the names of all of the prospects that are protected" under the override clause. This language is unambiguous and does not allow appellant to substitute substantial compliance for the protective-list requirement. *See Sheehy v. Bodin*, 349 N.W.2d 353, 354 (Minn. App. 1984) ("Contract language is to be given its plain and ordinary meaning."). In addition, even if we adopted appellant's substantial-compliance rule, the record does not support appellant's assertion that it substantially complied. The only written evidence regarding Pheasants Forever as a potential buyer was provided by Scheffler, not appellant, in the October 3, 2011 letter,

8

well after the 72-hour protective-list period ended. This letter was not a protective list because it did not contain Pheasants Forever's address and, in fact, misidentified Pheasants Forever as "Pheasants Unlimited." *See* Minn. Stat. § 82.55, subd. 16(1) (requiring a protective list to contain the names and addresses of all prospective buyers to be protected).

Because appellant failed to provide a protective list to respondents within 72 hours of the expiration of the second listing agreement as required by Minn. Stat. § 82.66, subd. 1(d)(1), the district court did not err by concluding that appellant is not entitled to a commission under the second listing agreement and override clause.

## II.

Alternatively, appellant argues that it is entitled to a commission based on Scheffler's October 3, 2011 letter, which it characterizes as a "separate contract" between the parties. The district court concluded that appellant was not entitled to a commission because either the alleged agreement lacked consideration or the letter failed to specify the consideration, an essential term.

Consideration is a basic element of contract formation. *S O Designs USA, Inc. v. Rollerblade, Inc.*, 620 N.W.2d 48, 53 (Minn. App. 2000), *review denied* (Minn. Feb. 21, 2001). "Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party." *C & D Invs. v. Beaudoin*, 364 N.W.2d 850, 853 (Minn. App. 1985), *review denied* (Minn. June 14, 1985). In Minnesota, the reviewing court "will not examine the adequacy of consideration as long as something of value has passed between

the parties." *Id.* But "past consideration cannot support a promise to pay and is invalid." *Sheehy*, 349 N.W.2d at 354.

In *Sheehy*, a broker and a real estate developer signed a written agreement stating that "[the broker] has introduced and is willing to help process the above project for a fee of $15,000.00 payable in full upon finding of the permanent financing." *Id.* at 353-54. We concluded that the broker's introduction of the buyer was past consideration and could not support the developer's promise to pay. *Id.* at 354. But we also concluded that the broker's willingness to help process the project was not past consideration. *Id.* This language required the broker to be available and, because the broker was available, he was entitled to the commission. *Id.*

The relevant language of Scheffler's October 3, 2011 letter states: "Inasmuch as you have contacted representatives of Pheasants Unlimited regarding purchase of the subject parcels, this will confirm that we agree to pay the agreed-upon commissions should your contact result in a sale." In essence, respondents agreed to pay appellant for its past action of contacting Pheasants Forever. This language is similar to the language in *Sheehy* promising to pay a commission for a past introduction. Unlike the other language in *Sheehy*, however, it does not require appellant to take any further actions. We therefore agree with the district court that Scheffler's promise was based solely on past consideration, which "cannot support a promise to pay." *See id.*

But appellant argues that it provided consideration by continuing to assist respondents and Pheasants Forever after receiving Scheffler's letter. Unlike the broker's promise in *Sheehy* to remain available to assist the sale, Scheffler's letter contains no

10

requirement that appellant act in the future and instead clearly states that respondents "decided not to renew the listing agreement with [appellant]." Because appellant's future performance was not bargained for and exchanged in return for respondents' promise to pay, appellant's actions after receiving Scheffler's letter cannot constitute consideration. *See Deli v. Hasselmo*, 542 N.W.2d 649, 656 (Minn. App. 1996) ("Consideration is something of value given in return for a performance or promise of performance that is bargained for . . . ."), *review denied* (Minn. Apr. 16, 1996).

The district court also concluded that the October 3, 2011 letter failed to qualify as a "written agreement" under Minn. Stat. § 82.85, subd. 2 (2014) because it did not include consideration, an essential term. Under Minn. Stat. § 82.85, subd. 2:

> No person required by this chapter to be licensed shall be entitled to or may bring or maintain any action in the courts for any commission, fee or other compensation with respect to the purchase, sale, lease or other disposition or conveyance of real property, or with respect to the negotiation or attempt to negotiate any sale, lease or other disposition or conveyance of real property unless there is a written agreement with the person required to be licensed.

As the district court found, this statute does not identify the terms needed to satisfy the written-agreement requirement. *See Poser v. Abel*, 510 N.W.2d 224, 227 n.2 (Minn. App. 1994) (reaching this conclusion regarding an earlier version of the statute), *review denied* (Minn. Feb. 24, 1994). But "cases discussing the statute of frauds and similar statutes are instructive as to the terms that must be included in a written agreement to satisfy this type of statute." *Id.* When analyzing a different statute that required a written agreement, this court concluded that "[c]onsideration is an essential element of a contract." *Estate of Peterson*, 579 N.W.2d 488, 491 (Minn. App. 1998), *review denied*

(Minn. Aug. 18, 1998). As in *Peterson*, appellant attempts to rely on extrinsic evidence of its actions to supply consideration, but extrinsic evidence cannot supply a missing essential element. *See id.* Based on its lack of consideration, an essential element of a contract, the October 3, 2011 letter does not qualify as a "written agreement" under Minn. Stat. § 82.85, subd. 2.

Finally, appellant argues that promissory estoppel and equitable estoppel preclude respondents from "contesting the existence of the October 3, 2011 contract." But appellant did not plead a claim for equitable relief. And this court has concluded that the statute's written-agreement requirement "would be defeated if a broker could recover compensation under" equitable theories like contract implied in fact, quasi-contract, and unjust enrichment. *Krogness v. Best Buy Co.*, 524 N.W.2d 282, 286-87 (Minn. App. 1994), *review denied* (Minn. Jan. 25, 1995). Promissory and equitable estoppel imply the existence of a contract based on promises or conduct. *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 284-86, 230 N.W.2d 588, 593-95 (1975). Like the equitable theories in *Krogness*, allowing appellant to assert promissory or equitable estoppel would frustrate the written-agreement requirement in Minn. Stat. § 82.85, subd. 2. *See* 524 N.W.2d at 286-87 (explaining that, to recover a commission based on contract implied in fact or quasi-contract, a broker would have to show that there was no written agreement between the parties).

## DECISION

Because appellant failed to strictly comply with Minn. Stat. § 82.66, subd. 1(d)(1) by providing a protective list to respondents and because the October 3, 2011 letter lacks

12

consideration, the district court did not err by concluding that appellant is not entitled to a commission. We therefore affirm the district court's grant of summary judgment to respondents.

**Affirmed.**